SCOTT A. KRONLAND
MATTHEW J. MURRAY (*Pro Hac Vice*)
ALTSHULER BERZON LLP
177 Post Street, Suite 300
San Francisco, CA 94108
Telephone: (415) 421-7151
Facsimile: (415) 362-8064
E-mail: skronland@altber.com
        mmurray@altber.com

JAMES E.T. KOSHIBA (768-0)
JONATHAN E. SPIKER (10230-0)
KOSHIBA PRICE & GRUEBNER
707 Richards Street, Suite 610
Honolulu, Hawaii 96813
Telephone: (808) 523-3900
Facsimile: (808) 526-9829
E-mail: jkoshiba@koshibalaw.com
        jspiker@koshibalaw.com

*Attorneys for Defendant Hawaii Government
Employees Association / AFSCME, Local 152*

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| PATRICIA GROSSMAN,<br><br>   Plaintiff,<br><br> v.<br><br>HAWAII GOVERNMENT EMPLOYEES ASSOCIATION/ AFSCME LOCAL 152; DAVID LASSNER, IN HIS OFFICIAL CAPACITY AS PRESIDENT OF THE UNIVERSITY OF HAWAII; AND RUSSELL A. SUZUKI, IN HIS OFFICIAL CAPACITY AS ATTORNEY GENERAL OF HAWAII,<br><br>   Defendants. | Case No. 18-00493 DKW-RT<br><br>**HAWAII GOVERNMENT EMPLOYEES ASSOCIATION / AFSCME LOCAL 152'S MOTION TO DISMISS COUNT II OF THE COMPLAINT** |

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................... iii

MOTION .......................................................................................... 1

MEMORANDUM IN SUPPORT OF MOTION ................................... 1

    INTRODUCTION ........................................................................ 1

    BACKGROUND .......................................................................... 2

    1.    Hawaii Revised Statutes Chapter 89 ....................................... 2

    2.    Plaintiff's lawsuit................................................................... 6

    LEGAL STANDARD.................................................................... 7

    ARGUMENT ............................................................................... 8

    I.    *Knight* forecloses plaintiff's theory that exclusive representative collective bargaining violates the First Amendment................................. 9

    II.    *Janus* did not disturb settled precedent that public employers may use exclusive representative collective bargaining ................................. 12

    III.    HRS Chapter 89 does not compel plaintiff to speak or petition, or compel plaintiff to associate for those purposes ..................................... 14

    CONCLUSION............................................................................ 17

CERTIFICATE OF SERVICE ............................................................ 18

# TABLE OF AUTHORITIES

## Cases

*Abood v. Detroit Bd. of Educ.*,
  431 U.S. 209 (1977)................................................................5

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)................................................................7

*Bain v. California Teachers Ass'n*,
  891 F.3d 1206 (9th Cir. 2018) .................................................7

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007)................................................................7

*Bierman v. Dayton*,
  900 F.3d 570 (8th Cir. 2018) ........................................... 12, 13

*Board of Ed. v. Hawaii Pub. Emp't Relations Bd.*,
  56 Haw. 85 (1974) ..................................................................2

*Board of Educ. of Westside Cmty. Sch. v. Mergens*,
  496 U.S. 226 (1990)..............................................................16

*City of Madison, Joint Sch. District No. 8 v. Wisconsin Emp't Relations Comm'n*,
  429 U.S. 167 (1976)................................................................5

*D'Agostino v. Baker*,
  812 F.3d 240 (1st Cir. 2016), *cert. denied*, 136 S.Ct. 2473 (2016)............. 12, 17

*Edwards v. Marin Park, Inc.*,
  356 F.3d 1058 (9th Cir. 2004) ..............................................7, 8

*Hicks v. Miranda*,
  422 U.S. 332 (1975)................................................................9

*Hill v. Service Emps. Int'l Union*,
  850 F.3d 861 (7th Cir. 2017), *cert. denied*, 138 S.Ct. 446 (2017)......................12

*Janus v. AFSCME Council 31*,
  138 S.Ct. 2448 (2018) ..................................................... passim

*Jarvis v. Cuomo*,
  2015 WL 1968224 (N.D.N.Y. Apr. 30, 2015)........................... 15, 17

*Jarvis v. Cuomo*,
  660 F. App'x 72 (2d Cir. 2016), *cert. denied*, 137 S.Ct. 1204 (2017) ...............12

*Knight v. Minnesota Cmty. Coll. Faculty Ass'n*,
  460 U.S. 1048 (1983)..............................................................9

*Knox v. SEIU Local 1000*,
  567 U.S. 298 (2012)..............................................................13

*Lathrop v. Donohue*,
  367 U.S. 820 (1961)..............................................................16

*Lehnert v. Ferris Faculty Ass'n,*
   500 U.S. 507 (1991)...................................................................5

*Mentele v. Inslee,*
   2016 WL 3017713 (W.D. Wash. May 26, 2016) .............................12

*Minnesota State Bd. for Cmty. Colls. v. Knight,*
   465 U.S. 271 (1984).......................................................... passim

*Poe v. Hawaii Labor Relations Bd.,*
   105 Haw. 97 (2004) ............................................................. 1, 5, 15

*PruneYard Shopping Ctr. v. Robins,*
   447 U.S. 74 (1980)..................................................................16

*Thompson v. Marietta Educ. Ass'n,*
   No. 2:18-cv-00628-MHW-CMV, ECF Doc. #52 (S.D. Ohio Jan. 14,
   2019)...................................................................................12

*Reisman v. Associated Faculties,*
   2018 WL 6312996 (D. Me. Dec. 3, 2018)................................. 12, 15

*Rumsfeld v. FAIR,*
   547 U.S. 47 (2006)..................................................................14

*Smith v. Arkansas State Highway Emps.,*
   441 U.S. 463 (1979)................................................................10

*Uradnik v. Inter Faculty Org.,*
   2018 WL 4654751 (D. Minn. Sept. 27, 2018), *aff'd*, No. 18-3086 (8th
   Cir. Dec. 3, 2018)..................................................................12

*Vaca v. Sipes,*
   386 U.S. 171 (1967)..................................................................1

*Washington State Grange v. Washington State Republican Party,*
   552 U.S. 442 (2008)................................................................15

*West Virginia Bd. of Educ. v. Barnette,*
   319 U.S. 624 (1943)................................................................14

**Statutory Authorities**

29 U.S.C. §159(a) .....................................................................6, 7

HRS §89-1............................................................................ 1, 2, 3

HRS §89-2..................................................................................3

HRS §89-3................................................................................3, 4

HRS §89-7..................................................................................3

HRS §89-8................................................................................1, 5

HRS §89-9................................................................................3, 4

HRS §89-13..................................................................................4

**Rules and Regulations**

Fed. R. Civ. P. 12(b)(6)................................................................1, 7

# MOTION

Defendant Hawaii Government Employees Association / AFSCME Local 152 ("HGEA") hereby moves for an order dismissing Count II in plaintiff's Complaint (Dkt. 1) pursuant to Federal Rule of Civil Procedure 12(b)(6) on the ground that Count II fails to state a viable claim for relief.  The legal theory upon which Count II is premised is contrary to United States Supreme Court precedent. *See Minnesota State Bd. for Cmty. Colls. v. Knight*, 465 U.S. 271 (1984).  This motion is based on the accompanying Memorandum in Support, the complete files and records of this action, and such other matters as the Court may properly consider in ruling on the motion.

# MEMORANDUM IN SUPPORT OF MOTION

## INTRODUCTION

Hawaii Revised Statutes Chapter 89, Collective Bargaining in Public Employment ("Chapter 89") provides for a democratic system of exclusive representative collective bargaining in which the majority of employees in a bargaining unit may, if they choose, select a union representative to negotiate and administer a single collective bargaining agreement to cover the entire unit.  *See* HRS §89-1 *et seq.*  In such systems, the exclusive representative, when acting in that capacity, owes a duty of fair representation to the entire bargaining unit, including to employees who have chosen not to join the union.  *See, e.g.*, *id.* §89-8(a); *Poe v. Hawaii Labor Relations Bd.*, 105 Haw. 97, 102, 104 (2004) (citing *Vaca v. Sipes,* 386 U.S. 171, 177 (1967)).  The same democratic system of collective bargaining has been used in the United States for decades for public and

1

private sector employees, including federal employees.  *See Janus v. AFSCME Council 31*, 138 S.Ct. 2448, 2466 (2018).

Plaintiff Patricia Grossman is a University of Hawaii at Hilo ("University") employee who alleges, in Count II of her Complaint, that the University's recognition of defendant Hawaii Government Employees Association / AFSCME Local 152 ("HGEA") as her unit's Chapter 89 exclusive representative violates her First Amendment rights.  That legal claim is foreclosed by *Minnesota State Board for Community Colleges v. Knight*, 465 U.S. 271 (1984).  The Supreme Court held in *Knight* that an indistinguishable system of exclusive representation "in no way restrained [non-union members'] freedom to speak … or their freedom to associate or not to associate with whom they please, including the exclusive representative." *Id.* at 288; *see also id.* at 291 (plaintiffs in *Knight* were "[u]nable to demonstrate an infringement of any First Amendment right").  Accordingly, Count II should be dismissed for failure to state a viable claim for relief.

## BACKGROUND

### 1.    Hawaii Revised Statutes Chapter 89

Chapter 89 was enacted in 1970 "to promote harmonious and cooperative relations between government and its employees and to protect the public by assuring effective and orderly operations of government" by, among other things, "[r]ecognizing the right of public employees to organize for the purpose of collective bargaining" and "[r]equiring public employers to negotiate with and enter into written agreements with exclusive representatives on matters of wages, hours, and other conditions of employment."  HRS §89-1(b); *see also Board of Ed.*

*v. Hawaii Pub. Emp't Relations Bd.*, 56 Haw. 85, 86 (1974); HRS §89-1(a)

(Legislature found that "enactment of positive legislation establishing guidelines

for public employment relations is the best way to harness and direct the energies

of public employees eager to have a voice in determining their conditions of work;

to provide a rational method for dealing with disputes and work stoppages; and to

maintain a favorable political and social environment").

Chapter 89 provides that public employees "have the right of self-

organization and the right to form, join, or assist any employee organization for the

purpose of bargaining collectively through representatives of their own choosing

on questions of wages, hours, and other terms and conditions of employment, and

to engage in lawful, concerted activities for the purpose of collective bargaining or

other mutual aid or protection, free from interference, restraint, or coercion."  HRS

§89-3.

Chapter 89 permits public employees, if they so choose, to designate an

"exclusive representative" by voting in a secret ballot election, and also provides a

process for employees to decertify a representative that no longer enjoys majority

support.  *Id.* §§89-2, 89-7, 89-8(a).  If the employees choose a representative, the

public employer must "meet at reasonable times" with the representative and

"negotiate in good faith" regarding certain "terms and conditions of employment."

*Id.* §89-9(a).  Chapter 89 specifies the terms and conditions over which the

employer is obligated to meet and negotiate with the exclusive representative, and

expressly "[e]xclude[s] from the subjects of negotiations" various matters,

including "matters of classification, reclassification, benefits of but not

3

contributions to the Hawaii employer-union health benefits trust fund, recruitment, examination, [and] initial pricing …." *Id.* §89-9(d).  The statute also provides that the "employer and the exclusive representative shall not agree to any proposal that would be inconsistent with the merit principle or the principle of equal pay for equal work … or that would interfere with" various enumerated "rights and obligations of a public employer." *Id.*

Under Chapter 89, the majority-designated exclusive representative also has the right to "consult" with the public employer on certain other matters, including "matters affecting employee relations, including those that are, or may be, the subject of a rule adopted by the employer." *Id.* §89-9(c).  Chapter 89 does not prohibit public employers from discussing such matters with individual employees, or anyone else.  To the contrary, the statute provides that a public employer "shall make every reasonable effort to consult with exclusive representatives and consider their input, *along with the input of other affected parties*, prior to effecting changes in any major policy affecting employee relations." *Id.* (emphasis added).

Chapter 89 does not require, and has never required, unit employees to become members of the organization that serves as the unit's exclusive representative, or prohibit them from joining other labor organizations.  To the contrary, Chapter 89 makes it unlawful for public employers or exclusive representatives to interfere with the rights of employees to form, join, and participate in the activities of employee organizations of their own choosing. *Id.* §§89-3, 89-13.  The designation of a Chapter 89 exclusive representative also does not preclude unit employees from speaking and petitioning about issues regarding

their public employers, just like all other citizens, whether individually or through organizations of their own choosing.[1]

Chapter 89 prohibits the exclusive representative, when acting in that capacity, from discriminating against employees who choose not to become union members by requiring such representatives to "represent[] the interests of all such employees without discrimination and without regard to employee organization membership." HRS §89-8(a); *see also Poe*, 105 Haw. at 104 (union has "duty of fair representation" to every "member of a collective bargaining unit"). Chapter 89 further provides that individual public employees "may present a grievance at any time to [their] employer and have the grievance heard without intervention of an employee organization." HRS §89-8(b).

After the Supreme Court's decision in *Janus*, public employees represented by labor unions who choose not to be members of those unions are no longer required to provide any financial support to cover the costs of union representation. 138 S.Ct. at 2486. Although non-members no longer can be required to pay "fair-share fees" to the exclusive representative, the exclusive representative still

---

[1] *See City of Madison, Joint Sch. Dist. No. 8 v. Wisconsin Emp't Relations Comm'n*, 429 U.S. 167, 173-76 & n.10 (1976) (bargaining unit members have the same First Amendment rights as other citizens to speak in opposition to union); *Abood v. Detroit Bd. of Educ.*, 431 U.S. 209, 230 (1977) ("The principle of exclusivity cannot constitutionally be used to muzzle a public employee who, like any other citizen, might wish to express [her] view about governmental decisions concerning labor relations.")*, overruled on other grounds by Janus*, 138 S.Ct. 2448; *Lehnert v. Ferris Faculty Ass'n*, 500 U.S. 507, 521 (1991) ("Individual employees are free to petition their neighbors and government in opposition to the union which represents them in the workplace.").

represents the non-member minority and must represent non-members fairly and on an equal basis as members.

The democratic, exclusive representation model of collective bargaining established by Chapter 89 is the same model used for collective bargaining for public employees of the federal government and about 40 other States, the District of Columbia, and Puerto Rico, *see, e.g.*, *Janus*, 138 S.Ct. at 2466; and for private-sector employees covered by the federal National Labor Relations Act and the Railway Labor Act, *see, e.g.*, 29 U.S.C. §159(a).  Exclusive representation is the very essence of labor relations and the collective bargaining framework in this country, and it has been so since passage of the Wagner Act in 1935.

**2.    Plaintiff's lawsuit**

Plaintiff is an admissions officer employed by the University in a bargaining unit represented by HGEA.  Complaint (Dkt. 1) ¶¶3, 10, 16-17, 62.  Although plaintiff alleges that she does not recall becoming a union member, HGEA's records show that plaintiff was a member of HGEA from 1995 until July 2018.  *Id.* ¶¶23-24.  Plaintiff emailed HGEA in July 2018 "expressing her wish to withdraw from the union," and she no longer wishes to be represented in collective bargaining by HGEA.  *Id.* ¶28; *see also, e.g.*, *id.* ¶63.  (For purposes of this motion, HGEA assumes the truth of these allegations.)

Plaintiffs' Complaint brings claims against HGEA, University President David Lassner, and Hawaii Attorney General Russell A. Suzuki.  The Complaint contains two counts.  Count I alleges that HGEA is refusing to allow plaintiff to withdraw from the union and terminate the deduction of membership dues from

her paycheck. *Id.* ¶¶37-54.[2]  Count II alleges that the designation of HGEA as the Chapter 89 exclusive representative of plaintiff's bargaining unit violates her First Amendment rights of speech and association because she does not want to be represented by HGEA. *Id.* ¶¶55-65.

## LEGAL STANDARD

"To survive a motion to dismiss" under Rule 12(b)(6), the allegations of the complaint, "accepted as true," must "'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

A motion to dismiss should be granted without leave to amend pursuant to Rule 12(b)(6) "'if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief, construing the complaint in the light most favorable to the plaintiff.'" *Bain v. California Teachers Ass'n*, 891 F.3d 1206, 1211 (9th Cir. 2018) (quoting *Edwards v. Marin Park, Inc.*, 356 F.3d 1058, 1061 (9th Cir. 2004)) (some internal quotation marks and citations omitted).

---

[2] In fact, plaintiff's withdrawal from membership was processed, the deduction of dues from her paycheck stopped, and she was refunded all the dues deducted from the beginning of the payroll period during which she made her request to withdraw.  HGEA will move for summary judgment on Count I at the appropriate time.

**ARGUMENT**

Plaintiff alleges in Count II that HGEA's designation as the exclusive representative of her bargaining unit "compels Mrs. Grossman to associate with HGEA and, through its representation of her, it compels her to petition the government with a certain viewpoint, despite that viewpoint being in opposition to Mrs. Grossman's own goals and priorities for the State of Hawaii." Complaint (Dkt. 1) ¶63. According to plaintiff, this results in "an unconstitutional abridgment of Mrs. Grossman's right not to be compelled to associate with speakers and organizations without her consent." *Id.* ¶64.

But Chapter 89 does not impose *any* personal obligation on plaintiff. She need not join HGEA or endorse its positions and, after *Janus*, she need not even provide any financial support to HGEA. Nor is she precluded from speaking and petitioning about any issues, whether individually or through organizations of her own choosing. Plaintiff's theory that exclusive representation collective bargaining, by itself, violates the First Amendment rights of non-union-member bargaining unit workers is foreclosed by the Supreme Court's decision in *Knight*, as every court to consider the issue has recognized. The Supreme Court reaffirmed in *Janus* that the States may continue to use systems of exclusive representative bargaining. And, even if the Supreme Court had not directly addressed the issue, plaintiff's First Amendment theory still would be meritless.

I. ***Knight* forecloses plaintiff's theory that exclusive representative collective bargaining violates the First Amendment**

In *Knight*, a group of Minnesota college instructors argued—like plaintiff here—that the exclusive representation provisions of that state's public employee labor relations act violated the First Amendment speech and associational rights of employees who did not wish to associate with the union that a majority had chosen as their bargaining unit's exclusive representative.  465 U.S. at 273, 278-79.  The state law granted such elected representatives the exclusive right to "meet and negotiate" over employment terms.  *Id.* at 274.  The state law also granted the unit's representative the exclusive right to "meet and confer" with campus administrators about employment-related policy matters outside the scope of mandatory negotiations.  *Id.* at 274-75.  Only the exclusive representative had the right to participate in both the "meet and negotiate" and "meet and confer" processes, with the exclusive representative's views being treated as the faculty's "official collective position" in those settings.  *Id.* at 273, 276.

The district court rejected the *Knight* plaintiffs' constitutional challenge with respect to the meet-and-negotiate (*i.e.*, collective bargaining) process.  *See id.* at 278.  On appeal, the Supreme Court summarily affirmed the lower court's rejection of the *Knight* plaintiffs' "attack on the constitutionality of exclusive representation in bargaining over terms and conditions of employment."  *Id.* at 278-79; *Knight v. Minnesota Cmty. Coll. Faculty Ass'n*, 460 U.S. 1048 (1983).[3]  The district court also concluded, however, that the meet-and-confer process violated the rights of

---

[3] The *Knight* summary affirmance remains binding precedent.  *See Hicks v. Miranda*, 422 U.S. 332, 344-45 (1975).

faculty members who had not joined the union that served as their exclusive representative but who wanted to be involved in employment-related policy-setting discussions.  In a separate, full opinion, the Supreme Court reversed the district court's judgment with respect to the meet-and-confer process, holding that even with respect to matters not involving terms and conditions of employment subject to bargaining, exclusive representation does not infringe the First Amendment speech or associational rights of non-member employees.  *Knight*, 465 U.S. at 278, 288.

The *Knight* Court began its analysis by recognizing that government officials have no obligation to negotiate or confer with faculty members, and that the meet-and-confer process (like the meet-and-negotiate process) was not a "forum" to which plaintiffs had any First Amendment right of access.  465 U.S. at 280-82.  The Court explained that non-members also had no constitutional right "as members of the public, as government employees, or as instructors in an institution of higher education" to "force the government to listen to their views." *Id.* at 283.  The government, therefore, was "free to consult or not to consult whomever it pleases."  *Id.* at 285; *see also Smith v. Arkansas State Highway Emps.*, 441 U.S. 463, 464-66 (1979) (government did not violate speech or associational rights of union supporters by accepting grievances filed by individual employees while refusing to recognize union's grievances).

The *Knight* Court then went on to consider whether Minnesota's public employee labor relations act violated those First Amendment rights that non-members *could* properly assert—namely, the right to speak and the right to

"associate or not to associate." 465 U.S. at 288. The Court concluded that Minnesota's law "*in no way* restrained appellees' freedom to speak on any education-related issue *or their freedom to associate or not to associate* with whom they please, including the exclusive representative." *Id.* (emphases added).

Non-members' speech rights were not infringed by Minnesota's system of exclusive representation because, while the exclusive representative's status "amplifie[d] its voice in the policymaking process," that amplification did not "impair[] individual instructors' constitutional freedom to speak." *Id.* As the Court explained, such amplification is "inherent in government's freedom to choose its advisers" and "[a] person's right to speak is not infringed when government simply ignores that person while listening to others." *Id.*

The Supreme Court found no infringement of non-members' associational rights because they were "free to form whatever advocacy groups they like" and were "not required to become members" of the organization acting as the exclusive representative. *Id.* at 289. The Court acknowledged that non-members may "feel some pressure to join the exclusive representative" to serve on its committees and influence its positions. *Id.* at 289-90. But the Court held that this "is no different from the pressure to join a majority party that persons in the minority always feel." *Id.* at 290. Such pressure "is inherent in our system of government; it does not create an unconstitutional inhibition on associational freedom." *Id.*

*Knight* thus considered whether an exclusive representation system violates the speech or associational rights of individuals who are not members of the union that has been designated as their exclusive representative, and held that it does not

11

do so—thereby foreclosing the contrary claim plaintiff asserts in Count II.  *See id.* at 288 ("[T]he First Amendment guarantees the right both to speak and to associate.  *Appellees' speech and associational rights, however, have not been infringed .…*") (emphasis added); *id.* at 290 n.12 (non-members' "speech and associational freedom have been wholly unimpaired").

Every court to consider the issue has concluded that *Knight* forecloses any claim that a democratic system of exclusive representative collective bargaining violates the First Amendment.  *See Bierman v. Dayton*, 900 F.3d 570 (8th Cir. 2018); *Hill v. Service Emps. Int'l Union*, 850 F.3d 861 (7th Cir. 2017), *cert. denied*, 138 S.Ct. 446 (2017); *Jarvis v. Cuomo*, 660 F. App'x 72 (2d Cir. 2016), *cert. denied*, 137 S.Ct. 1204 (2017); *D'Agostino v. Baker*, 812 F.3d 240 (1st Cir. 2016), *cert. denied*, 136 S.Ct. 2473 (2016); *Thompson v. Marietta Educ. Ass'n*, No. 2:18-cv-00628-MHW-CMV, ECF Doc. #52 (S.D. Ohio Jan. 14, 2019); *Reisman v. Associated Faculties*, 2018 WL 6312996 (D. Me. Dec. 3, 2018); *Uradnik v. Inter Faculty Org.*, 2018 WL 4654751 (D. Minn. Sept. 27, 2018), *aff'd*, No. 18-3086 (8th Cir. Dec. 3, 2018); *Mentele v. Inslee*, 2016 WL 3017713 (W.D. Wash. May 26, 2016).[4]

## II.   *Janus* did not disturb settled precedent that public employers may use exclusive representative collective bargaining

Plaintiff relies on the Supreme Court's recent decision in *Janus*.  *See* Complaint (Dkt. 1) ¶¶56-57, 59-60.  But *Janus* held only that public employees

---

[4] A copy of the Opinion and Order in *Thompson v. Marietta Education Association*, No. 2:18-cv-00628-MHW-CMV, ECF Doc. #52 (S.D. Ohio Jan. 14, 2019), is attached because the opinion is not available on Westlaw.

who are not union members cannot be required to pay "fair-share" or "agency" fees to an exclusive representative for collective bargaining representation. *Janus*, 138 S.Ct. at 2460.[5]  As the Eighth Circuit recently explained, *Janus* "never mentioned *Knight*, and the constitutionality of exclusive representation standing alone was not at issue." *Bierman*, 900 F.3d at 574.

The majority opinion in *Janus*, moreover, expressly distinguished between compelled financial support for an exclusive representative and the underlying system of exclusive representation. *Janus*, 138 S.Ct. at 2465, 2467.  The majority opinion explained that while the States may no longer require public employees to pay fair-share fees to their exclusive representatives, the States can otherwise "keep their labor-relations systems exactly as they are," including by "requir[ing] that a union serve as exclusive bargaining agent for its employees." *Id.* at 2478, 2485 n.27; *see also id.* at 2466, 2485 n.27 (States may "follow the model of the federal government," in which "a union chosen by majority vote is designated as the exclusive representative of all the employees"); *id*. at 2471 n.7 ("[W]e are not in any way questioning the foundations of modern labor law.").

*Janus* also observed that while exclusive representation might not be permissible "in other contexts," in the collective bargaining context the imposition of a duty of fair representation on the exclusive representative *avoids* any constitutional questions.  *Id.* at 2469, 2478.

_____

[5] *Knox v. SEIU Local 1000*, 567 U.S. 298 (2012) (cited at Complaint (Dkt. 1) ¶58), likewise involved only the collection of money from non-union members.

13

As such, both *Knight* and *Janus* require rejection of plaintiff's claim that the exclusive representation model of collective bargaining violates the First Amendment.

### III.   HRS Chapter 89 does not compel plaintiff to speak or petition, or compel plaintiff to associate for those purposes

Even if plaintiff's First Amendment claim were not foreclosed by on-point and longstanding precedent, it still would be meritless.  Plaintiff's Complaint asserts that plaintiff is being compelled to speak and petition against her will, and that plaintiff is being compelled to associate for First Amendment purposes.  But plaintiff does not allege any facts to show that bargaining unit workers are required to personally do or say anything to join or endorse HGEA or its speech.[6] And neither support for HGEA nor HGEA's speech is attributed to bargaining unit workers in the sense that matters for First Amendment purposes, because reasonable people would not believe that all bargaining unit workers necessarily *agree with* the exclusive representative or its positions.

In *Rumsfeld v. FAIR*, 547 U.S. 47 (2006), for example, law schools were required to "'associate' with military recruiters in the sense that they interact[ed] with them." *Id.* at 69.  Nonetheless, there was no impingement of the law schools' First Amendment rights because the presence of military recruiters on campus would not lead reasonable people to believe the "law schools agree[d] with any

---

[6] Because plaintiff is not required to say or do anything by virtue of HGEA's designation as the exclusive representative of her bargaining unit, her claim does not involve the kind of compelled speech at issue in cases like *West Virginia Bd. of Educ. v. Barnette*, 319 U.S. 624 (1943).

speech by recruiters." *Id.* at 65; *see also Washington State Grange v. Washington State Republican Party*, 552 U.S. 442, 457-59 (2008) (Roberts, C.J., concurring) (explaining that certain cases involved "forced association" because outsiders would believe that parties "endorsed" or "agreed with" another party's message); *Jarvis v. Cuomo*, 2015 WL 1968224, at *6 (N.D.N.Y. Apr. 30, 2015) (explaining that "[t]he public's perception is relevant in forced association cases").

The same is true here.  Under Chapter 89, the chosen exclusive representative serves as the representative of the bargaining unit *collectively* and *as a whole*, rather than serving as the individual representative or agent of any particular bargaining unit member.  *See, e.g.*, *Reisman*, 2018 WL 6312996, at *5 ("The Union is not … [a non-member's] individual agent.  Rather, the Union is the agent for the bargaining-unit which is a distinct entity separate from the individual employees who comprise it.").  Indeed, when negotiating or enforcing a collective bargaining agreement, the exclusive representative must often weigh the competing interests of different employees in the bargaining unit and determine what is best for the unit as a whole, subject to the duty of fair representation.  *See Poe*, 105 Haw. at 101 ("A labor union is charged with the duty of protecting the interests of its members as a group, and a union's interests are therefore broader than those of any one of its members.  … When the interest of members of the bargaining unit are not identical, a union may be unable to achieve complete satisfaction of everyone.  It is granted a 'wide range of reasonableness' so long as it acts with 'complete good faith and honesty of purpose.'") (some internal quotation marks and citations omitted).

Because different viewpoints exist within every democratic system and because exclusive representatives represent the bargaining unit as a whole, public employers in systems of exclusive representation-based collective bargaining—like that established by Chapter 89—reasonably understand that not all unit employees necessarily agree with the majority that elected the exclusive representative.  *See Knight*, 465 U.S. at 276 ("The State Board considers the views expressed … to be the faculty's official collective position.  It recognizes, however, that not every instructor agrees with the official faculty view.…").  Moreover, just as reasonable people understand that the views of a parent-teacher association, alumni association, elected congressional representative, or bar association are not necessarily shared by every parent, alumnus, constituent, or attorney, reasonable people understand that individuals in the bargaining unit represented by HGEA do not necessarily agree with every position taken by HGEA.  *See, e.g.*, *Lathrop v. Donohue*, 367 U.S. 820, 859 (1961) (Harlan, J., concurring) ("[E]veryone understands or should understand that the views expressed are those of the State Bar as an entity separate and distinct from each individual.") (internal quotation marks omitted); *Board of Educ. of Westside Cmty. Sch. v. Mergens*, 496 U.S. 226, 250 (1990) (high school students understand that school does not endorse speech of school-recognized student groups); *PruneYard Shopping Ctr. v. Robins*, 447 U.S. 74, 87 (1980) (views of individuals handing out pamphlets in mall not likely to be identified with mall).

For these reasons, HGEA's views are not attributed or imputed to individual bargaining unit employees so as to implicate the First Amendment.  *D'Agostino,*

812 F.3d at 244 (Souter, J., sitting by designation) ("[W]hen an exclusive bargaining agent is selected by majority choice, it is readily understood that employees in the minority, union or not, will probably disagree with some positions taken by the agent answerable to the majority."); *Jarvis*, 2015 WL 1968224, at *6 ("[The Union's] representation of Plaintiffs would not be likely to create the perception that Plaintiffs endorse [the Union's] expressive activities. … A reasonable person would not perceive that the activities of [the Union], as a majority-elected representative, … are identical with the views of the providers it represents.").

Because plaintiff does not allege she is personally required to do anything, and HGEA's speech is not attributed to plaintiff personally, plaintiff's compelled speech and association claim would be meritless under general First Amendment principles even if it were not foreclosed by precedent specific to the collective bargaining context.

## CONCLUSION

For the foregoing reasons, Count II of the Complaint should be dismissed.

Dated:  February 11, 2019        Respectfully submitted,

By:   */s/Scott A. Kronland*
      SCOTT A. KRONLAND
      MATTHEW J. MURRAY (*Pro Hac Vice*)
      ALTSHULER BERZON LLP

      JAMES E.T. KOSHIBA
      JONATHAN E. SPIKER
      KOSHIBA PRICE & GRUEBNER

      *Attorneys for Defendant Hawaii Government*
      *Employees Association / AFSCME Local 152*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a copy of the foregoing document was

served electronically through CM/ECF on the following:

ROBERT H. THOMAS
1003 Bishop Street, Suite 1600
Honolulu, Hawaii 96813

BRIAN KELSEY (*Pro Hac Vice*)
JEFFREY M. SCHWAB (*Pro Hac Vice*)
Liberty Justice Center
190 South LaSalle Street, Suite 1500
Chicago, Illinois 60603
      Attorneys for Plaintiff PATRICIA GROSSMAN

DEREK T. MAYESHIRO
ELISABETH A.K. CONTRADES
LESLIE P. CHINN
2444 Dole St., Bachman Hall 110
Honolulu, HI 96822
      Attorneys for Defendant DAVID LASSNER

JAMES HALVORSON
RICHARD THOMASON
Department of the Attorney General, State of Hawaii
235 S. Beretania Street, 15th Floor
Honolulu, Hawaii 96813
      Attorneys for Defendant RUSSELL A. SUZUKI

Dated:  February 11, 2019

By:   */s/Scott A. Kronland*

      SCOTT A. KRONLAND
      MATTHEW J. MURRAY (*Pro Hac Vice*)
      ALTSHULER BERZON LLP

      JAMES E.T. KOSHIBA
      JONATHAN E. SPIKER
      KOSHIBA PRICE & GRUEBNER

      *Attorneys for Defendant Hawaii Government*
      *Employees Association / AFSCME Local 152*