IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAIʻI

| | |
|---|---|
| PATRICIA GROSSMAN,<br><br>Plaintiff,<br><br>vs.<br><br>HAWAII GOVERNMENT EMPLOYEES ASSOCIATION/ AFSCME LOCAL 152; DAVID LASSNER, IN HIS OFFICIAL CAPACITY AS PRESIDENT OF THE UNIVERSITY OF HAWAIʻI; AND CLARE E. CONNORS, IN HER OFFICIAL CAPACITY AS ATTORNEY GENERAL OF HAWAIʻI,<br><br>Defendants. | CIVIL NO. 18-00493 DKW-RT<br><br>**ORDER GRANTING DEFENDANTS' MOTION TO DISMISS COUNT II** |

Grossman alleges the violation of her First Amendment rights against compelled association and speech in the context of union representation. Compl., Dkt. No. 1. Specifically, Count I alleges that the Hawaiʻi Government Employee's Association (HGEA or Union) has refused both to allow Grossman to withdraw from the Union and to return her dues. Count II alleges that Hawaiʻi's exclusive representation structure compels Grossman's association with the Union

and imputes the Union's speech to her, including with respect to viewpoints in which she disagrees.

Defendants move to dismiss Count II, as barred by *Minnesota State Bd. for Cmty. Colleges v. Knight,* 465 U.S. 271 (1984), and *Mentele v. Inslee,* 916 F.3d 783 (9th Cir. 2019). Motion to Dismiss (Motion), Dkt. No. 27; Reply in Support of Motion (Reply), Dkt. No. 43. Because the Court agrees, Defendants' Motion to Dismiss Count II is GRANTED without leave to amend.

## BACKGROUND

Grossman is an admissions officer at the University of Hawaiʻi at Hilo and, as such, is a public sector employee. Compl., at 5. HGEA is the certified exclusive representative of certain University employees, including Grossman, for collective bargaining purposes. *Id*. at 6. By statute, the exclusive representative "shall be responsible for representing the interests of all [bargaining unit employees] without discrimination and without regard to employee organization membership." Hawaiʻi Revised Statute (HRS) §89-8(a). This statutory requirement is the basis of Grossman's claim in Count II. Grossman alleges that the exclusive representation structure results in compelled speech because the Union's statements, whatever they may be, are ascribed to University employees,

such as herself, irrespective of Union membership and irrespective of whether they share the Union's views.

On December 20, 2018, Grossman initiated this action seeking declaratory and injunctive relief under 42 U.S.C. §1983 and 28 U.S.C. §2201(a). On February 11, 2019, HGEA filed a Motion to Dismiss Count II, arguing that Grossman failed to state a claim upon which relief can be granted because her claims in Count II are foreclosed by controlling precedent. Defendants Lassner and Suzuki[1] joined in the Motion. Dkt. Nos. 38, 40. Grossman filed an opposition, and Defendants timely replied, also offering supplemental authority. Dkt. Nos. 41, 43-44. The Court found these matters suitable for disposition without a hearing, pursuant to Local Rule 7.2(d), and thus vacated the previously-scheduled hearing on the Motion. Dkt. No. 45. This disposition follows.

## STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) authorizes the Court to dismiss a complaint that fails "to state a claim upon which relief can be granted." Rule 12(b)(6) is read in conjunction with Rule 8(a), which requires "a short and plain

---

[1] While Russell A. Suzuki was the named Defendant who joined in the Motion in his official capacity as Attorney General of the State of Hawai'i, he has since been replaced as State Attorney General by Clare E. Connors. Accordingly, pursuant to Fed.R.Civ.P. 25(d), State Attorney General Connors in her official capacity is substituted in place of Defendant Suzuki.

3

statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2). Pursuant to *Ashcroft v. Iqbal*, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In addition, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Id.* Where it appears "beyond doubt that the plaintiff can prove no set of facts in support of his claims which would entitle him to relief," the motion to dismiss should be granted without leave to amend. *Bain v. California Teachers Ass'n*, 891 F. 3d 1206, 1211 (9th Cir. 2018) (internal quotes and citations omitted.).

## DISCUSSION

In Count II of the Complaint, Grossman challenges HRS §§89-7(b) and 89-8(a). Together, these provisions grant exclusive representation of Hawai'i government employees in collective bargaining to a single employee organization—here, HGEA. Grossman asks this Court "to recognize and acknowledge that…neither the government nor the union can claim the union is representing non-members in its negotiations with the government" because to do so "would violate Grossman's First Amendment right to freedom of association."

Opp. at 2. In moving to dismiss this claim, Defendants argue that *Knight* and *Mentele* foreclose Grossman's First Amendment challenge. The Court agrees that each of these decisions, binding on this Court, preclude Count II. As such, Count II is dismissed for failure to state a claim under Rule 12(b)(6).

Grossman challenges the provisions of state law that allow a single employee organization, such as HGEA, to be "responsible for representing the interests of all [bargaining unit] employees without discrimination and without regard to employee organization membership." Opp. at 2. The Supreme Court in *Knight* considered a similar Minnesota law that "establishe[d] a procedure, based on majority support within a unit, for the designation of an exclusive bargaining agent for that unit." According to Minnesota law, where such an agent was selected, "the employer may neither 'meet and negotiate' nor 'meet and confer' with any members of that bargaining unit except through their exclusive representative." *Knight,* 465 U.S. at 274. The exclusive representative structure in *Knight* contemplated that not every individual employee would agree with the views of the employee's peers or exclusive representative on every policy question, nor would every employee in the bargaining unit be a member of the exclusive representative. *See id.* at 276.

The Minnesota law and the exclusive representation structure it gave rise to in *Knight* are materially indistinguishable from those here: Hawaiʻi requires that a designated, exclusive representative bargain on behalf of public sector employees on employment-related matters, recognizing that some of those employees are not members of and may disagree with the position of the exclusive representative. Such a system, according to the Supreme Court, does not violate the First Amendment because "The state has in no way restrained appellees' freedom to speak on any education-related issue or their freedom to associate or not to associate with whom they please, including the exclusive representative. Nor has the state attempted to suppress any ideas." *Knight*, 465 U.S. at 288-290.

Faced with *Knight*, Grossman argues that *Knight* no longer represents good law after *Janus v. Am. Fed'n of State, Cty., & Mun. Employees, Council 31,* 138 S. Ct. 2448, 2456 (2018). *See* Opp. at 11-12. *Janus* struck down an Illinois law which "forced" public employees to "subsidize a union, even if they choose not to join and strongly object to the positions the union takes in collective bargaining and related activities." *Id*. at 2460. The Court concluded that "this arrangement violates the speech rights of nonmembers *by compelling them to subsidize private speech…*" *Id*. (emphasis added).

Nothing in the *Janus'* reasoning, however, calls into question the holding in *Knight* regarding exclusive representation. Indeed, much of *Janus* suggests the Court's intent to cabin its holding to the propriety of compelled union fees. For instance, the Court noted that the elimination of unconstitutional union fees would not undermine the constitutionally-permissible exclusive representative structure, despite its "significant impingement on associational freedoms that would not be tolerated in other contexts." *Janus*, 138 S.Ct. at 2478.[2] It is plain that *Janus'* holding is limited to the question of compelled *fees*, expressly overruling the Court's precedent to the contrary.[3] *Id*. at 2486. *Janus* offers no similar pronouncement regarding *Knight,* does not mention *Knight*, and therefore leaves undisturbed *Knight*'s precedent regarding exclusive representation.

Ninth Circuit, post-*Janus* precedent presents a similarly insurmountable obstacle for Count II. In *Mentele,* the Ninth Circuit held that exclusive representation does not violate a non-union-members' freedom of association. *Mentele*, 916 F.3d at 787 ("Following *Knight*, every circuit court to address the constitutionality of exclusive bargaining arrangements (as distinct from the

---

[2]*See also Janus,* 138 S.Ct. at 2485 n.27 ("States can keep their labor-relations systems exactly as they are—only they cannot force nonmembers to subsidize public-sector unions.").
[3]*Abood v. Detroit Bd. Of Education*, 431 U.S. 209 (1977).

7

constitutionality of compelling financial support for such bargaining arrangements) has concluded that these provisions do not violate the First Amendment."). Significantly, *Mentele* expressly acknowledged having considered both *Knight* and *Janus* before reaching its decision. *Id*. at 786 ("Our analysis relies largely on two Supreme Court cases that discuss the propriety of exclusive bargaining representation for public employees: the Supreme Court's decision in *Minnesota State Board for Community Colleges v. Knight* … and its recent decision in *Janus v. American Federation of State, County, & Municipal Employees.*"). The Ninth Circuit went even further: "Even assuming that *Knight* no longer governs the question presented, we would still conclude that [the state's] exclusive bargaining arrangement with [the union] is constitutionally permissible." *Id.* at 791.[4]

Grossman attempts to evade *Mentele* by identifying herself as a "full-fledged public employee" in contrast to the quasi-government employees at issue in

---

[4]In so ruling, the Ninth Circuit rejected several of the same arguments raised by Grossman here. For instance, just as Grossman (Opp. at 3, 9, 15) repeatedly references *Janus'* observation that "Designating a union as the employees' exclusive representative substantially restricts the rights of individual employees," the Ninth Circuit acknowledged *Janus'* observation that exclusive representation is a "significant impingement on associational freedoms." *Mentele*, 916 F.3d at 787. The Ninth Circuit nonetheless concluded, "*Knight* is the most appropriate guide," representing "a closer fit than *Janus*." *Id*. at 788.

*Mentele*. Opp. at 12-13. This is a distinction without a substantive difference.[5]

"*Mentele*'s analysis of the impact of exclusive representation on non-member's associational rights contains no [] limitation" on its application to so-called "full-fledged" versus quasi-public employees. Indeed, *Mentele* "was based entirely on *Knight*'s analysis, which involved full-fledged public employees." *Few v. United Teachers Los Angeles, et al.*, 2:18-cv-09531 (C.D. Cal 2019)(Staton, D.J.), Order Granting Defendant's Motion to Dismiss, Dkt. No 44 at 39-40.

Grossman further asserts that if *Mentele* cannot be distinguished, it (and *Knight*) should simply be overruled. Opp. at 14-15. How this district court is supposed to simply overrule controlling decisions from the Supreme Court and the Ninth Circuit—even if it were inclined to do so—is something Grossman never explains.

---

[5]The Court acknowledges that there are differences between full-fledged and quasi-public sector employees and that those differences can, in some circumstances, matter. *See e.g. Mentele*, 916 F.3d at 785, 789. How those differences matter in the context of this Motion, however, is neither clearly explained nor apparent.

## **CONCLUSION**

*Knight* and *Mentele* unmistakably bar Count II. Accordingly, Defendants' Motion is GRANTED, and Count II is DISMISSED without leave to amend.

IT IS SO ORDERED.

DATED: May 21, 2019 at Honolulu, Hawai'i.



Derrick K. Watson
United States District Judge

---

*Patricia Grossman v. Hawaii Government Employees Association, et al.;* Civil No. 18-00493 DKW-RT; **ORDER GRANTING DEFENDANTS' MOTION TO DISMISS COUNT II**