IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| PATRICIA GROSSMAN, | Civil No. 18-00493-DKW-RT |
| Plaintiff, | **MEMORANDUM IN SUPPORT OF MOTION** |
| vs. | |
| HAWAII GOVERNMENT EMPLOYEES ASSOCIATION / AFSCME LOCAL 152; DAVID LASSNER, IN HIS OFFICIAL CAPACITY AS PRESIDENT OF THE UNIVERSITY OF HAWAII; AND CLARE E. CONNORS, IN HER OFFICIAL CAPACITY AS ATTORNEY GENERAL OF HAWAII, | Date:  Tuesday, January 21, 2020 Time:  9:30 A.M. Judge:  Derrick K. Watson |
| Defendants. | |

469704

# TABLE OF CONTENTS

Page

PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT .................2

MEMORANDUM IN SUPPORT OF MOTION .................................1

INTRODUCTION..........................................................................1

STATEMENT OF MATERIAL UNDISPUTED FACTS ........................2

SUMMARY JUDGMENT STANDARD ...........................................5

ARGUMENT ..............................................................................6

    I.   Refusing to withdraw Grossman's union membership and continuing to deduct dues from her paycheck violated her First Amendment rights under *Janus*. ...............................................................................6

        A.   Under *Janus*, unions may only claim membership and deduct dues if they first receive "affirmative consent." ..........................................6

        B.   Requiring employees to withdraw their union membership only within arbitrary windows set by the union violates *Janus*. ....................9

        C.   The Union cannot avoid a judgment of this Court by releasing Grossman from union membership on its own timing after the filing of this lawsuit. ....12

    II.   When Grossman exercises her First Amendment right to withdraw her affirmative consent to pay union dues, HGEA cannot rely on a contract that was based on a mutual mistake of what her rights were. ...................16

CONCLUSION...........................................................................18

# TABLE OF AUTHORITIES

**Page**

**Cases**

*AIG Hawai'i Ins. Co. v. Bateman,*
  82 Haw. 453, 923 P.2d 395 (1996) .................................................................. 17

*Already, LLC v. Nike, Inc.,*
  568 U.S. 85 (2013) ............................................................................................ 13

*Belgau v. Inslee, No. 18-5620 RJB,*
  2018 U.S. Dist. LEXIS 175543 (W.D. Wash. Oct. 11, 2018)........................... 12

*College Savings Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd.,*
  527 U.S. 666 (1999) ............................................................................................ 7

*D. H. Overmyer Co. v. Frick Co.,*
  405 U.S. 174 (1972) ............................................................................................ 6

*Emeldi v. Univ. of Or.,*
  698 F.3d 715 (9th Cir. 2012) .............................................................................. 5

*Fisk v. Inslee,*
  759 F.App'x 632 (9th Cir. 2019) ....................................................................... 13

*Harper v. Va. Dep't of Taxation,*
  509 U.S. 86 (1993) .............................................................................................. 8

*Janus v. AFSCME,*
  138 S. Ct. 2448 (2018) ........................................................... 1, 3, 6, 7, 11, 16

*Johnson v. Zerbst,*
  304 U.S. 458 (1938) ............................................................................................ 6

*Jordan v. Fox, Rothschild, O'Brien & Frankel,*
  20 F.3d 1250 (3d Cir. 1994) ............................................................................... 9

*Knox v. SEIU Local 1000,*
  567 U.S. 298 (2012) .......................................................................................... 14

*Neely v. United States,*
  546 F.2d 1059 (3d Cir. 1976) ............................................................................. 8

469704

## Table of Authorities—continued

Page

*Ohio Bell Tel. Co. v. Public Utilities Comm'n,*
   301 U.S. 292 (1937) ................................................................ 6, 7

*Pasha v. United States,*
   484 F.2d 630 (7th Cir. 1973) .................................................. 8

*Pele Def. Fund v. Paty,*
   73 Haw. 578, 837 P.2d 1247 (1992) ...................................... 15

*Philippine Sugar Estates Dev. Co. v. Gov't of Philippine Islands,*
   247 U.S. 385 (1918) ................................................................ 17

*Pinsky v. Duncan,*
   79 F.3d 306 (2d Cir. 1996) ...................................................... 9

*Roe v. Wade,*
   410 U.S. 113 (1973) ................................................................ 15

*Super Tire Eng'g Co. v. McCorkle,*
   416 U.S. 115 (1974) ................................................................ 15

*United States v. Lewis,*
   342 F. Supp. 833 (E.D. La. 1972) ......................................... 8-9

*United States v. Lewis,*
   478 F.2d 835 (5th Cir. 1973) .................................................. 8

*Wyatt v. Cole,*
   994 F.2d 1113 (5th Cir. 1993) ................................................ 9

*Young v. UPS,*
   135 S. Ct. 1338 (2015) ............................................................ 5

## Statutes

28 U.S.C. § 2201 ........................................................................ 1, 11

42 U.S.C § 1983 ......................................................................... 1, 11

Haw. Rev. Stat. § 89-4 ............................................................... 10, 11

469704

## MEMORANDUM IN SUPPORT OF MOTION

## INTRODUCTION

Government employees have a First Amendment right not to join or pay any fees to a union "unless the employee affirmatively consents" to do so. *Janus v. AFSCME*, 138 S. Ct. 2448, 2486 (2018). Grossman repeatedly notified her employer, the University of Hawaii ("the University"), that it did not have her affirmative consent to withdraw union dues from her paychecks. These requests were denied. Instead, the University insisted that Grossman would have to wait to exercise her First Amendment right not to pay union dues until an opt-out period determined by the University's collective bargaining agreement with the union, Defendant Hawaii Government Employees Association ("HGEA" or the "Union").

Plaintiff has brought this case under 42 U.S.C § 1983 and 28 U.S.C. § 2201(a), seeking declaratory and injunctive relief, as well as damages in the amount of the dues previously deducted from her paychecks. This Court dismissed Count II of the Complaint (Dkt. 46). Grossman now submits this Memorandum in support of her Motion for Summary Judgment on Count I of the Complaint, asking the Court to declare that the withdrawal policies to which she was subject constituted a violation of her First Amendment rights, and to award her damages in the amount of union dues previously deducted from her paycheck. The Court should grant the Motion because the case primarily presents questions of law appropriate for summary

1

disposition, and Grossman can demonstrate that she is entitled to judgment as a matter of law.

## STATEMENT OF MATERIAL UNDISPUTED FACTS

Plaintiff incorporates the parties' Joint Stipulation Regarding Undisputed Facts (Dkt. 57) ("UF"). The facts are listed verbatim below for reference.

1.     Defendant David Lassner is the President of the University of Hawaii ("University").

2.     Defendant Clare E. Connors is the Attorney General for the State of Hawaii.

3.     Defendant Hawaii Government Employees Association / AFSCME Local 152 ("HGEA") is a labor organization.

4.     HGEA is the certified collective bargaining representative of a bargaining unit of administrative, professional, and technical employees of the University known as Unit 8.

5.     Plaintiff Patricia Grossman ("Grossman") is an employee of the University and member of Unit 8.

6.     Employees in Unit 8 are paid through the State of Hawaii Department of Accounting and General Services ("DAGS").

7.     Employees in Unit 8 may become HGEA members by signing a membership card that authorizes the deduction of union dues from their pay.

469704

8. Employees in Unit 8 are not required to become members of HGEA or authorize dues deductions as a condition of employment.

9. DAGS relies on information provided by HGEA regarding which employees have properly authorized or cancelled dues deductions.

10. HGEA members have the right to run for union office, vote in union officer elections, and otherwise participate in HGEA's internal affairs. Nonmembers do not have these membership rights.

11. In 1995, Grossman signed the HGEA membership application card attached to the UF as Exhibit 1.

12. DAGS deducted union dues from Grossman's pay and remitted those dues to HGEA after she became a HGEA member.

13. Before June 27, 2018, non-union-members in Unit 8 paid fair-share fees to HGEA to cover their share of the cost of collective bargaining negotiations and contract administration. The "chargeable" fair-share fees paid by nonmembers were on average approximately 75% of full member dues and were always lower than full member dues. After the Supreme Court issued *Janus v. AFSMCE, Council 31*, 138 S.Ct. 2448 (2018) on June 27, 2018, DAGS immediately stopped deducting, and HGEA stopped receiving, fair-share fees from nonmembers.

14. Between July 6 and July 10, 2018, Grossman exchanged emails with certain staff members at HGEA, DAGS, and the University. The email chains

3

containing these emails are attached to the UF as Exhibit 2.

15.     On or about July 14, 2018, Grossman sent a letter dated July 13, 2018 to HGEA's Hawaii Island Division office and to the University of Hawaii by certified mail, asking to resign her membership and to stop deduction of dues.  The letter is attached to the UF as Exhibit 3.  Grossman's letter was received by HGEA's Hawaii Island Division office on the island of Hawaii on or about July 14, 2018.

16.     On January 9, 2019, HGEA notified DAGS of Grossman's request to stop dues deductions, and dues deductions from Grossman's pay ended.

17.     A total of $402.60 in dues was deducted from Grossman's pay from July 10, 2018 through the time deductions stopped, covering dues for the period July 1, 2018 through December 31, 2018. Specifically, deductions of $33.55 took place on approximately the 5th and 20th of each month beginning July 20, 2018 and ending January 4, 2019. Deductions on approximately the 5th of the month covered dues for the second half of the previous month. Deductions on approximately the 20th of the month covered dues for the first half of that month.

18.     On January, 10, 2019, HGEA sent Grossman a check in the amount of $402.60. A copy of the check and cover letter is attached to the UF as Exhibit 4.

19.     On January 23, 2019, Grossman's counsel sent a letter to HGEA counsel regarding the check. A copy of the letter is attached to the UF as Exhibit 5.

20.     On January 28, 2019, HGEA sent a follow-up letter to Grossman's

4

counsel regarding the check. A copy of that letter is attached to the UF as Exhibit 6.

21.     On June 21, 2019, Grossman's counsel informed HGEA's counsel that Grossman had not cashed the check.

22.     On June 28, 2019, HGEA sent Grossman a reissued check in the amount of $442.86. A copy of that reissued check and cover letter is attached to the UF as Exhibit 7.

23.     Grossman is no longer a member of HGEA. No dues or other payments to HGEA are currently being deducted from her pay. HGEA has instructed DAGS and the University that dues should not be deducted from Grossman's pay in the future, and that HGEA will not accept receipt of any dues deducted from Grossman's pay, unless she chooses to join HGEA and authorizes deductions again.

## SUMMARY JUDGMENT STANDARD

"A party is entitled to summary judgment if there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Young v. UPS*, 135 S. Ct. 1338, 1367 (2015) (quoting F. R. Civ. P. 56(a)). "When deciding whether an asserted evidentiary dispute is genuine, [the court] inquire[s] whether a jury could reasonably find in the nonmovant's favor from the evidence presented." *Emeldi v. Univ. of Or.*, 698 F.3d 715, 730 (9th Cir. 2012). In this case, the parties agree that the material facts are not in dispute and have filed a Stipulation Regarding Undisputed Facts (Dkt. 57) for the Court's consideration.

469704

## ARGUMENT

**I.      Refusing to withdraw Grossman's union membership and continuing to deduct dues from her paycheck violated her First Amendment rights under *Janus*.**

     **A.      Under *Janus*, unions may only claim membership and deduct dues if they first receive "affirmative consent."**

The Court in *Janus* explained that payments to a union could be deducted from a non-member's wages only if that employee "affirmatively consents" to pay:

> Neither an agency fee nor any other payment to the union may be deducted from a nonmember's wages, nor may any other attempt be made to collect such a payment, unless the employee affirmatively consents to pay. By agreeing to pay, nonmembers are waiving their First Amendment rights, and such a waiver cannot be presumed. Rather, to be effective, the waiver must be freely given and shown by "clear and compelling" evidence. Unless employees clearly and affirmatively consent before any money is taken from them, this standard cannot be met.

*Janus*, 138 S. Ct. at 2486 (citations omitted).

Supreme Court precedent provides that certain standards be met in order for a person to properly waive his or her constitutional rights. First, waiver of a constitutional right must be of a "known right or privilege." *Johnson v. Zerbst*, 304 U.S. 458, 464 (1938). Second, the waiver must be freely given; it must be voluntary, knowing, and intelligently made. *D. H. Overmyer Co. v. Frick Co.*, 405 U.S. 174, 185-86 (1972). Finally, the Court has long held that it will "not presume acquiescence in the loss of fundamental rights." *Ohio Bell Tel. Co. v. Public Utilities Comm'n*, 301 U.S. 292, 307 (1937).

6

469704

In Grossman's case, she could not have waived her First Amendment right not to join or pay a union. First, neither the Union nor her employer informed her of her right not to pay a union because, at the time she signed her union membership application, the Supreme Court had not yet issued its decision in *Janus*. Second, neither the Union nor her employer informed her of her right not to pay a union because such a right was prohibited by the collective bargaining agreement in place at the time. Therefore, Grossman had no choice but to pay the Union and did not voluntarily, knowingly, or intelligently waive her First Amendment right.

Because the Court will "not presume acquiescence in the loss of fundamental rights," *Ohio Bell Tel. Co.,* 301 U.S. at 307, the waiver of constitutional rights requires "clear and compelling evidence" that the employees wish to waive their First Amendment right not to pay union dues or fees. *Janus,* 138 S. Ct. 2484. In addition, "[c]ourts indulge every reasonable presumption against waiver of fundamental constitutional rights." *College Savings Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd.,* 527 U.S. 666 (1999) (citing *Aetna Ins. Co. v. Kennedy ex rel. Bogash,* 301 U.S. 389, 393 (1937)). The union application Grossman signed in 1995 did not provide a clear and compelling waiver of her First Amendment right not to join or pay a union because it did not expressly state that she had a constitutional right not to pay a union and because it did not expressly state that she was waiving that right. *See* UF ¶ 11, Exhibit 1, (union membership

7

application, with no language expressly waiving rights).

Nor can the Union rely on the extant case law at the time Grossman signed her union authorization. In *Harper v. Va. Dep't of Taxation*, 509 U.S. 86, 97 (1993), the Supreme Court explained that "[w]hen this Court applies a rule of federal law to the parties before it, that rule is the controlling interpretation of federal law and must be given full retroactive effect in all cases still open on direct review and as to all events, regardless of whether such events predate or postdate our announcement of the rule." The rule announced in *Janus* is, therefore, the relevant law when analyzing pre-*Janus* conduct.

The Union's liability for dues paid by Grossman extends backward before *Janus*, limited only, if at all, by a possible statute of limitations defense. Monies or property taken from individuals under statutes later found unconstitutional must be returned to their rightful owner. In *Harper*, taxes collected from individuals under a statute later declared unconstitutional were returned. *Id.* at 98-99. Fines collected from individuals pursuant to statutes later declared unconstitutional also must be returned. *See Pasha v. United States*, 484 F.2d 630, 632-33 (7th Cir. 1973); *United States v. Lewis*, 478 F.2d 835, 846 (5th Cir. 1973); *Neely v. United States*, 546 F.2d 1059, 1061 (3d Cir. 1976). "Fairness and equity compel [the return of the unconstitutional fine], and a citizen has the right to expect as much from his government, notwithstanding the fact that the government and the court were

8

proceeding in good faith[.]" *United States v. Lewis*, 342 F. Supp. 833, 836 (E.D. La. 1972).

While there are some circuit court decisions finding good faith to be a defense to a prejudgment replevin or attachment of property without due process of law, even in those cases the defendant had to return the property at issue. In *Wyatt v. Cole*, 994 F.2d 1113, 1115 (5th Cir. 1993), the defendants seized the plaintiff's cattle and tractor based on a replevin statute later held unconstitutional on due process grounds. While a good faith defense shielded the defendants from liability from incidental damages, they still had to return the cattle and tractor. *Id*. In *Pinsky v. Duncan*, 79 F.3d 306, 311-13 (2d Cir. 1996), where a defendant attained an unconstitutional attachment on plaintiff's real property, the defendant did not retain that property. In *Jordan v. Fox, Rothschild, O'Brien & Frankel*, 20 F.3d 1250, 1258 (3d Cir. 1994), where the defendant attained an unconstitutional attachment on plaintiff's checking account, the state court "vacated the attachment of [plaintiff's] checking account."

Under *Harper* and these precedents, the Union has no good faith basis to hold Grossman to her union authorization or to keep the monies it seized from her wages before the Supreme Court put an end to this unconstitutional practice. Grossman is due a refund of these dues, which amount to approximately $67 per month. UF ¶ 17.

**B.     Requiring employees to withdraw their union membership only within arbitrary windows set by the union violates *Janus*.**

After the decision in *Janus*, the Union maintained that Grossman could only

end her dues deduction during an arbitrary time period of the Union's choice, despite Grossman's repeated requests to stop the dues deduction from her paycheck. UF ¶ 14-15; Exhibits 2-3. The Union was explicit in its July 10, 2018 email to Grossman that such violation of her rights was being taken under color of state law:

> [R]ecent legislation (HB 1725) was passed this last session and enacted into law(Act 007) designating a "window" where active members can elect to discontinue dues deductions. Since your records show that you did activate your membership in 1995, you'd be subject to this window. If, after our discussion, you'd still like to move forward with suspending your dues, your "window" for discontinuing dues would fall next year between 5/23/19 – 6/23/19 (appears you signed up around 5/23/95).

Email of Union Agent Lorena D. Kauhi to Grossman, July 10, 2018, UF Exhibit 2 at 5.

The University also maintained that Grossman could only end her dues deduction during an arbitrary time period of the Union's choice. It followed Hawaii state law and delegated this responsibility to the Union: "DAGS relies on information provided by HGEA regarding which employees have properly authorized or cancelled dues deductions." UF ¶ 9; *see also* Email of Lorena D. Fisher to Grossman, July 9, 2018, UF Exhibit 2 at 2 ("DAGS does not define member/non-member as this is determined by the unions."). In his official capacity as President of the University, David Lassner is the official responsible for past and present actions of the University. Such actions were undertaken pursuant to Act 007, Haw. Rev. Stat. § 89-4(c), under the color of which Grossman's constitutional rights were

469704

abridged.

Grossman is entitled to a declaration under 42 U.S.C. § 1983 and 28 U.S.C. § 2201(a) that Haw. Rev. Stat. § 89-4(c) is unconstitutional as a violation of her First Amendment rights to free speech and freedom of association for allowing the withholding of union dues from her paycheck until thirty days before the anniversary date of her allegedly joining the union. She is also entitled to an injunction preventing Attorney General Connors from enforcing the statute against public employees like Grossman.

The union dues authorization applications signed by Grossman before the Supreme Court's decision in *Janus* cannot meet the standards set forth for waiving a constitutional right, as required by the Supreme Court in *Janus*. 138 S. Ct. at 2484. Therefore, President Lassner, the Union, and Attorney General Connors cannot hold employees like Grossman to a time window to withdraw their union membership based on these invalid authorizations.

Since being informed of her constitutional rights by the *Janus* decision, Grossman has not signed any additional union authorization application. Therefore, she has never knowingly waived his constitutional right to pay nothing to the Union, and has, therefore, never given the union the "affirmative consent" required by the *Janus* decision. In the absence of "affirmative consent," this Court should declare that a request to end dues deductions is effective immediately.

11

**C.** **The Union cannot avoid a judgment of this Court by releasing Grossman from union membership on its own timing after the filing of this lawsuit.**

For months, Grossman was denied her right to withdraw her union membership. Yet soon after the filing of this lawsuit, in a ploy to avoid the jurisdiction of this Court, the Union attempted to placate Grossman without subjecting their policies to judicial scrutiny. Defendants have suggested that they intend to use this fact to claim the case is now moot, and they should not have to defend the unconstitutional policy that they continue to enforce against any employee who is not determined enough to sue. Grossman, therefore, addresses this argument in the first instance.

Such a claim of mootness is the same avoidance strategy that other unions have employed across the country, as they attempt to dodge employees who would challenge them. *See, e.g., Belgau v. Inslee*, No. 18-5620 RJB, 2018 U.S. Dist. LEXIS 175543, at *7 (W.D. Wash. Oct. 11, 2018) (where, after being sued, the union changed course and said it would "instruct the State to end dues deductions for each Plaintiff on the one year anniversary" of their membership without requiring employees to send the notice their policy required). This Court should not allow the Union to avoid judicial review by picking off employees one by one, and adhering to the Constitution's requirements only after being sued. A "defendant cannot automatically moot a case simply by ending its unlawful conduct once sued."

469704

*Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91 (2013) (citing *City of Mesquite v. Aladdin's Castle, Inc.*, 455 U. S. 283, 289 (1982)). Yet that is precisely what the Union would like the Court to allow in this case. Grossman respectfully submits that this Court should not countenance such gimmicks.

The Ninth Circuit has already rejected the exact same mootness argument plaintiffs present here. As it explained:

> Although no class has been certified and SEIU and the State have stopped deducting dues from Appellants, Appellants' non-damages claims are the sort of inherently transitory claims for which continued litigation is permissible. *See Gerstein v. Pugh*, 420 U.S. 103, 111 n.11, 95 S. Ct. 854, 43 L. Ed. 2d 54 (1975) (deciding case not moot because the plaintiff's claim would not last "long enough for a district judge to certify the class"); *see also County of Riverside v. McLaughlin*, 500 U.S. 44, 52, 111 S. Ct. 1661, 114 L. Ed. 2d 49 (1991). Indeed, claims regarding the dues irrevocability provision would last for at most a year, and we have previously explained that even three years is "too short to allow for full judicial review." *Johnson v. Rancho Santiago Cmty. Coll. Dist.*, 623 F.3d 1011, 1019 (9th Cir. 2010). Accordingly, Appellants' non-damages claims are not moot simply because the union is no longer deducting fees from Appellants.

*Fisk v. Inslee*, 759 F.App'x 632, 633 (9th Cir. 2019). The Ninth Circuit recognized that claims like Grossman's would never be addressed by the Court if the union were allowed to moot them in this way. Indeed, since most union opt-out windows are annual, these cases would never reach judgment in a district court, much less have

13

469704

the opportunity for appellate review.[1]

Such tactics are not new; they are a typical and longstanding strategy by unions to avoid judicial scrutiny. In *Knox v. SEIU Local 1000*, 567 U.S. 298 (2012), the Supreme Court rejected an attempt by the union to moot a case by sending a full refund of improperly exacted fees to an entire class:

> In opposing the petition for certiorari, the SEIU defended the decision below on the merits. After certiorari was granted, however, the union sent out a notice offering a full refund to all class members, and the union then promptly moved for dismissal of the case on the ground of mootness. Such post-certiorari maneuvers designed to insulate a decision from review by this Court must be viewed with a critical eye. *See City News & Novelty, Inc. v. Waukesha*, 531 U.S. 278, 283-284, 121 S. Ct. 743, 148 L. Ed. 2d 757 (2001). The voluntary cessation of challenged conduct does not ordinarily render a case moot because a dismissal for mootness would permit a resumption of the challenged conduct as soon as the case is dismissed. *See City of Mesquite v. Aladdin's Castle, Inc.*, 455 U.S. 283, 289, 102 S. Ct. 1070, 71 L. Ed. 2d 152 (1982). And here, since the union continues to defend the legality of the Political Fight-Back fee, it is not clear why the union would necessarily refrain from collecting similar fees in the future.

*Knox*, 567 U.S. at 307. As in *Knox*, here the Union continues to assert the legality of its withdrawal policy but wishes to avoid this Court determining its legality. Unlike in *Knox*, the Union has not even offered Grossman a full refund of her dues. Grossman's claim is for all dues deducted since she became a union member more than 20 years ago. Complaint ¶ 52. Even if this Court were to determine this claim

---

[1] The Ninth Circuit ultimately dismissed the case because of defective pleading that had failed to make the arguments in the district court that Grossman now presents to this Court. The Court found such arguments had been waived. 759 F. App'x at 634.

is limited to the statute of limitations, that would amount to two years' worth of dues, which the Union has never offered. *See Pele Def. Fund v. Paty,* 73 Haw. 578, 595, 837 P.2d 1247, 1259 (1992) (the usual statute of limitations for § 1983 claims in Hawaii is two years). Nor did the Union ever offer Grossman anything in satisfaction of her claims for declaratory relief, nor attempt to satisfy her demand for attorneys' fees, nor could it enjoin enforcement of the state law at issue.

These principles of law regarding a live case or controversy are not novel or unique to this case: it is well settled that where a claim is capable of repetition but will evade review, courts are empowered to issue declaratory judgments. In *Super Tire Eng'g Co. v. McCorkle*, 416 U.S. 115, 125 (1974), the Supreme Court recognized that "[i]t is sufficient…that the litigant show the existence of an immediate and definite governmental action or policy that has adversely affected and continues to affect a present interest." The Court pointed to *Roe v. Wade,* 410 U.S. 113 (1973), where the birth of the plaintiff's child did not moot claims regarding a right to abortion. The Court explained that even if the need for an injunction had passed, declaratory relief was still appropriate where there was "governmental action directly affecting, and continuing to affect, the behavior of citizens in our society." *Super Tire,* 416 U.S. at 125. The opt-out window Grossman was subject to is a policy of the State of Hawaii, embodied in an agreement it negotiated with the Union. This policy continues to impact present interests, as President Lassner, the Union, and

15

Attorney General Connors continue to enforce it and assert its legality. This continuing direct effect on the behavior of public employees is grounds for this Court's issuance of declaratory relief.

Count I is not moot. Grossman is entitled to an award of damages in the form of the union dues withheld from her paychecks, not simply the defendants attempting to partially pay her back only when caught. She is also entitled to declaratory relief: that her signing the union dues authorization did not constitute affirmative consent as required by *Janus*; that forcing Grossman to remain a member of the Union without affirmative consent, restricting withdrawal to an arbitrary 30 day time period set by the union, and withholding union dues from her paychecks without affirmative consent all violated her First Amendment rights.

## II. When Grossman exercises her First Amendment right to withdraw her affirmative consent to pay union dues, HGEA cannot rely on a contract that was based on a mutual mistake of what her rights were.

Based on the positions taken by unions in similar cases, Grossman expects the union to argue that she "voluntarily" entered into an agreement to pay union dues. Quite the contrary, Grossman was mandated by a state law that has now been ruled unconstitutional to either pay union dues or to pay their virtual equivalent in agency fees. This mandatory agreement, based on an unconstitutional choice, is not enforceable when Grossman asserts her First Amendment right to withdraw her affirmative consent to pay union dues.

469704

For over 100 years, the Supreme Court has recognized that a contract based upon a mutual mistake is voidable by one of the parties upon discovery of the mistake: "It is well settled that courts of equity will reform a written contract where, owing to mutual mistake, the language used therein did not fully or accurately express the agreement and intention of the parties." *Philippine Sugar Estates Dev. Co. v. Gov't of Philippine Islands*, 247 U.S. 385, 389 (1918). Here, Grossman discovered the mistake that agency fees were constitutional when the Supreme Court ruled otherwise in *Janus*. She then requested out of the contract, but the assertion of his First Amendment right was denied.

The Hawaii Supreme Court adopts the same principles, such that "[w]here a mistake of one party at the time a contract was made as to a basic assumption on which he [or she] made the contract has a material effect on the agreed exchange of performances that is adverse to him [or her], the contract is voidable. . ." *AIG Hawai'i Ins. Co. v. Bateman*, 82 Haw. 453, 457, 923 P.2d 395, 399 (1996) (quoting Restatement (Second) of Contracts § 152).

The "mutual mistake of law" doctrine applies to the circumstances of this case. Both Grossman and HGEA were laboring under the same mistake at the time the contract was ostensibly formed—that they were permitted to take money from her whether she signed or not. This misapprehension of law by all parties was something all the parties thought they knew and assumed that it would continue to

17

govern their actions. Yet the Supreme Court's clarification now frustrates the purposes toward which the parties all made the same mistake. This Court should find, therefore, that the mutual mistake that agency fees were permissible renders the claimed contract unenforceable. HGEA should not be permitted to keep Grossman's money now that the truth is known.

## CONCLUSION

For the forgoing reasons, this Court should grant Grossman's Motion for Summary Judgment.

DATED: Honolulu, Hawaii, October 21, 2019.

> Respectfully submitted,
> DAMON KEY LEONG KUPCHAK HASTERT
>
> /s/ *Robert H. Thomas*
> ROBERT H. THOMAS
> LIBERTY JUSTICE CENTER
>
> BRIAN K. KELSEY (*Pro Hac Vice*)
> JEFFREY M. SCHWAB (*Pro Hac Vice*)
> REILLY STEPHENS (*Pro Hac Vice*)
>
> Attorneys for Plaintiff
>   PATRICIA GROSSMAN

18