SCOTT A. KRONLAND
MATTHEW J. MURRAY (*Pro Hac Vice*)
ALTSHULER BERZON LLP
177 Post Street, Suite 300
San Francisco, CA 94108
Telephone: (415) 421-7151
Facsimile: (415) 362-8064
E-mail: skronland@altber.com
          mmurray@altber.com

JAMES E.T. KOSHIBA (768-0)
JONATHAN E. SPIKER (10230-0)
KOSHIBA PRICE & GRUEBNER
707 Richards Street, Suite 610
Honolulu, Hawaii 96813
Telephone: (808) 523-3900
Facsimile: (808) 526-9829
E-mail: jkoshiba@koshibalaw.com
          jspiker@koshibalaw.com

*Attorneys for Defendant Hawaii Government*
*Employees Association / AFSCME, Local 152*

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| PATRICIA GROSSMAN,<br><br>                    Plaintiff,<br><br>     v.<br><br>HAWAII GOVERNMENT<br>EMPLOYEES ASSOCIATION/<br>AFSCME LOCAL 152; DAVID<br>LASSNER, IN HIS OFFICIAL<br>CAPACITY AS PRESIDENT OF THE<br>UNIVERSITY OF HAWAII; AND<br>CLARE E. CONNORS, IN HER<br>OFFICIAL CAPACITY AS<br>ATTORNEY GENERAL OF<br>HAWAII,<br><br>                    Defendants. | Case No. 18-00493 DKW-RT<br><br>**HAWAII GOVERNMENT<br>EMPLOYEES ASSOCIATION /<br>AFSCME LOCAL 152'S<br>OPPOSITION TO PLAINTIFF'S<br>MOTION FOR SUMMARY<br>JUDGMENT (DKT. 60), AND<br>CROSS-MOTION FOR<br>SUMMARY JUDGMENT**<br><br>Hearing:   January 24, 2020, 9:30 AM<br>Trial:       June 15, 2020<br>Judge:     Hon. Derrick K. Watson |

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................. ii

MOTION ........................................................................................ viii

MEMORANDUM ............................................................................ 1

BACKGROUND ............................................................................. 2

LEGAL STANDARD ...................................................................... 6

ARGUMENT .................................................................................. 7

I.   Plaintiff's Claim for Prospective Relief Is Moot ............................. 7

II.  Pre-Resignation Dues Deductions Pursuant to Plaintiff's Voluntary
     Membership Agreement Did Not Violate Her First Amendment Rights ....... 9

     A. Plaintiff voluntarily authorized dues deductions ...................... 9

     B. Plaintiff's contention that her consent to pay dues was not "freely
        given" is meritless ................................................... 12

     C. Plaintiff's claim for pre-resignation damages also fails for lack of
        state action .......................................................... 16

III. Plaintiff's Post-Resignation Damages Claim Is Moot and Meritless ........... 18

     A. Plaintiff's claim for post-resignation damages is moot ................ 18

     B. Plaintiff's post-resignation deductions resulting from HGEA's
        administrative error did not violate the First Amendment ............. 19

     C. If there had been no administrative error, the post-resignation
        deductions still would not have violated the First Amendment ......... 22

CONCLUSION ............................................................................... 25

CERTIFICATE OF SERVICE ........................................................... 27

# TABLE OF AUTHORITIES

**Federal Cases**

*Abood v. Detroit Board of Education*,
 431 U.S. 209 (1977)............................................................................3

*American Rivers v. National Marine Fisheries Service*,
 126 F.3d 1118 (9th Cir. 1997) ..........................................................7

*Anderson v. SEIU Local 503*,
 __ F.Supp.3d. ___, 2019 WL 4246688 (D. Or. Sept. 4, 2019)..............10, 12, 13

*Babb v. California Teachers Association*,
 378 F.Supp.3d 857 (C.D. Cal. 2019) ......................................8, 13, 16

*Bain v. California Teachers Association*,
 156 F.Supp.3d 1142 (C.D. Cal. 2015) ................................................16

*Board of County Commissioners v. Brown*,
 520 U.S. 397 (1997)...........................................................................21

*Beckstrand v. Read*,
 680 F.App'x 609 (9th Cir. 2017) .......................................................18

*Belgau v. Inslee*,
 2018 WL 4931602 (W.D. Wash. Oct. 11, 2018)........................10, 11

*Belgau v. Inslee*,
 359 F.Supp.3d 1000 (W.D. Wash. 2019) ...............................11, 16, 17

*Bermudez v. SEIU Local 521*,
 2019 WL 1615414 (N.D. Cal. Apr. 16, 2019)...................................13

*Blum v. Yaretsky*,
 457 U.S. 991 (1982)...........................................................................17

*Brady v. United States*,
 397 U.S. 742 (1970)...........................................................................14

*Buckley v. Valeo*,
 424 U.S. 1 (1976)................................................................................9

*Celotex Corp. v. Catrett*,
   477 U.S. 317 (1986)................................................................6

*City of Los Angeles v. Lyons*,
   461 U.S. 95 (1983)................................................................8

*Clement v. City of Glendale*,
   518 F.3d 1090 (9th Cir. 2008) ...............................................15

*Cohen v. Cowles Media Co.*,
   501 U.S. 663 (1991)..............................................................10

*Collins v. Womancare*,
   878 F.2d 1145 (9th Cir. 1989) ...............................................20

*Coltec Industries, Inc. v. Hobgood*,
   280 F.3d 262 (3d Cir. 2002) ..................................................14

*Cooley v. California Statewide Law Enforcement Association*,
   2019 WL 331170 (E.D. Cal. Jan. 25, 2019) .............................12

*Cooley v. California Statewide Law Enforcement Association*,
   385 F.Supp.3d 1077 (E.D. Cal. 2019) ...............................12, 16

*Crockett v. NEA-Alaska*,
   367 F.Supp.3d 996 (D. Alaska 2019) .................................13, 16

*Dingle v. Stevenson*,
   840 F.3d 171 (4th Cir. 2016) .................................................14

*Farrell v. International Association of Firefighters*,
   781 F.Supp. 647 (N.D. Cal. 1992)..........................................10

*Fisk v. Inslee*,
   2017 WL 4619223 (W.D. Wash. Oct. 16, 2017).......................10

*Fisk v. Inslee*,
   759 F.App'x 632 (9th Cir. 2019)..........................................9, 10

*Hallinan v. Fraternal Order of Police of Chicago Lodge No. 7*,
   570 F.3d 811 (7th Cir. 2009) .................................................25

*Hassett v. Lemay Bank & Trust Co.*,
   851 F.2d 1127 (8th Cir. 1988) ..........................................................................20

*Janus v. AFSCME, Council 31*,
   138 S.Ct. 2448 (2018)...............................................................................*passim*

*Janus v. AFSMCE, Council 31*,
   __ F.3d __, 2019 WL 5704367 (7th Cir. Nov. 5, 2019)....................................15

*Johnson v. Rancho Santiago Community College District*,
   623 F.3d 1011 (9th Cir. 2010) .............................................................................8

*Kidwell v. Transportation Communications International Union*,
   946 F.2d 283 (4th Cir. 1991) ...............................................................................9

*Knox v. SEIU, Local 1000*,
   567 U.S. 298 (2012).............................................................................................9

*Lamberty v. Connecticut State Police Union*,
   2018 WL 5115559 (D. Conn. Oct. 19, 2018) ....................................................19

*Masters v. Screen Actors Guild*,
   2004 WL 3203950 (C.D. Cal. Dec. 8, 2004) .....................................................10

*Mayer v. Wallingford-Swarthmore School District*,
   __ F.Supp.3d ___, 2019 WL 4674397 (E.D. Pa. Sept. 24, 2019) .................7, 19

*Minnesota State Board v. Knight*,
   465 U.S. 271 (1984)...........................................................................................10

*Molina v. Pennsylvania Social Service Union, SEIU*,
   392 F.Supp.3d 469 (M.D. Pa. 2019)..................................................................19

*Monell v. Department of Social Services of the City of New York*,
   436 U.S. 658 (1978).....................................................................................19, 21

*N.L.R.B. v. U.S. Postal Service*,
   827 F.2d 548 (9th Cir. 1987) .............................................................................10

*National Abortion Federation v. Center for Medical Progress*,
   685 F.App'x 623 (9th Cir. 2017) .......................................................................13

*O'Callaghan v. Regents of University of California,*
   2019 WL 2635585 (C.D. Cal. June 10, 2019) ................................................. 12

*Ohno v. Yasuma,*
   723 F.3d 984 (9th Cir. 2013) ............................................................................ 16

*Oliver v. SEIU Local 668,*
   __ F.Supp.3d ___, 2019 WL 5964778 (E.D. Pa. Nov. 12, 2019) .............. *passim*

*Ouzts v. Maryland National Insurance Co.,*
   505 F.2d 547 (9th Cir. 1974) (en banc) ........................................................... 20

*Puckett v. United States,*
   556 U.S. 129 (2009) .......................................................................................... 14

*Roberts v. AT&T Mobility LLC,*
   877 F.3d 833 (9th Cir. 2017) ............................................................................ 17

*Roe v. Wade,*
   410 U.S. 113 (1973) ............................................................................................ 9

*Rosebrock v. Mathis,*
   745 F.3d 963 (9th Cir. 2014) ......................................................................... 7, 8

*S-1 v. Spangler,*
   832 F.2d 294 (4th Cir. 1987) ............................................................................ 18

*Seager v. United Teachers Los Angeles,*
   2019 WL 3822001 (C.D. Cal. Aug. 14, 2019) ........................................ 8, 11, 13

*Smith v. Bieker,*
   2019 WL 2476679 (N.D. Cal. June 13, 2019) ............................................. 11, 14

*Smith v. Superior Court,*
   2018 WL 6072806 (N.D. Cal. Nov. 16, 2018) .................................................. 11

*Stoianoff v. State of Montana,*
   695 F.2d 1214 (9th Cir. 1983) .......................................................................... 22

*Summers v. Earth Island Institute,*
   555 U.S. 488 (2009) ............................................................................................ 8

*Super Tire Engineering Co. v. McCorkle,*
  416 U.S. 115 (1974)...........................................................................9

*Sutton v. City of Philadelphia,*
  21 F.Supp.3d 474 (E.D. Pa. 2014).....................................................21

*Tsao v. Desert Palace, Inc.,*
  698 F.3d 1128 (9th Cir. 2012) .............................................19, 20, 21

*United States v. Lewis,*
  342 F. Supp. 833 (E.D. La. 1972).....................................................14

*Weyandt v. Pennsylvania State Correction Officers Associations,*
  2019 WL 5191103 (M.D. Pa. Oct. 15, 2019) ....................................18

*Yamada v. Weaver,*
  872 F.Supp.2d 1023 (D. Haw. 2012)..................................................24

**State Cases**

*Ahn v. Liberty Mutual Fire Insurance Co.,*
  126 Haw. 1 (2011) ..............................................................................23

*Clark v. Cassidy,*
  64 Haw. 74 (1981) ..............................................................................23

*HGEA v. Lingle,*
  124 Haw. 197 (2010) ..........................................................................24

*Perricone v. Perricone,*
  292 Conn. 187 (2009) .........................................................................13

*Poe v. Hawaii Labor Relations Board,*
  105 Haw. 97 (2004) ..............................................................................3

*Robert D. Ferris Trust v. Planning Commision of County of Kauai,*
  378 P.3d 1023 (Haw. Ct. App. 2016) .................................................24

*State v. Jordan,*
  72 Haw. 597 (1992) ............................................................................24

*State v. Nakata,*
  76 Haw. 360 (1994) ............................................................................24

**Federal Statutes**

42 U.S.C. §1983 ...................................................................................*passim*

**State Statutes**

2018 Haw. Laws, Act 7 (H.B. 1725), §3 ...........................................*passim*

HRS §1-3..............................................................................................23

HRS §89-3...........................................................................................*passim*

HRS §89-4...........................................................................................*passim*

HRS §89-8...............................................................................................3

HRS §89-13....................................................................................3, 24, 25

HRS §89-14.............................................................................................24

HRS §657-7.............................................................................................18

**Rules & Regulations**

Fed. R. Civ. P. 56 ...................................................................................6

**Other Authorities**

Restatement (Second) of Contracts §151 (1981)....................................15

## HGEA'S CROSS-MOTION FOR SUMMARY JUDGMENT

Defendant Hawaii Government Employees Association / AFSCME Local 152 ("HGEA") opposes Plaintiff's motion for summary judgment (Dkt. 60) and hereby cross-moves for summary judgment pursuant to FRCP 56 against Plaintiff's remaining claim, Count I in Plaintiff's Complaint (Dkt. 1).  This motion is based on the Memorandum below, HGEA's accompanying Separate Concise Statement of Facts, the complete files and records of this action, and such other matters as the Court may properly consider.

## MEMORANDUM

Plaintiff is a University of Hawaii employee who voluntarily signed a union membership agreement authorizing the deduction of union dues in exchange for member rights and benefits, which she enjoyed for two decades.  In July 2018, she sent defendant HGEA's Hawaii Island Division a letter resigning union membership and requesting that dues deductions end.  Due to an administrative error or mail lost in transit, HGEA's Oahu Fiscal Office never received the letter. Had that administrative error not occurred, HGEA would have instructed the state Department of Accounting and General Services ("DAGS") in August 2018 to end Plaintiff's deductions, and HGEA would have sent Plaintiff a refund of any post-resignation deductions.  After HGEA learned of the error in January 2019, HGEA promptly instructed DAGS to end deductions and sent Plaintiff a full refund of post-resignation dues, plus interest.

Plaintiff brings suit under 42 U.S.C. §1983, contending that her First Amendment rights were violated.  She seeks prospective relief and a refund of all dues she ever paid.  Her claim fails on the undisputed facts.

First, Plaintiff's claim for prospective relief is moot.  She is no longer an HGEA member, her dues deductions have ended, and there is no reasonable likelihood they will resume.

Second, Plaintiff's claim for retrospective damages based on the dues she paid *before* her resignation is meritless.  Plaintiff voluntarily became an HGEA member, affirmatively authorized those dues deductions, and received consideration in return.  Her First Amendment rights were not violated when she

paid the dues she agreed to pay.  As every court to consider the issue has concluded, *Janus v. AFSCME, Council 31*, 138 S.Ct. 2448 (2018) ("*Janus I*"), does not entitle union members to a refund of voluntary membership dues.

Finally, Plaintiff's 42 U.S.C. §1983 claim for damages for *post*-resignation dues deductions fails for three independent reasons:  (1) Plaintiff's claim is moot, because HGEA already refunded her post-resignation dues; (2) Plaintiff's claim fails for lack of state action, because the post-resignation deductions were caused by HGEA's inadvertent administrative error or mail lost in transit, not any action "under color of law" or pursuant to official HGEA policy; and (3) even if the post-resignation deductions had been intentional, HGEA's refusal to notify the State to end the deductions would have *violated* Hawaii law, and private actions contrary to state law do not give rise to a §1983 claim.

## BACKGROUND

**a.**  Defendant HGEA is the democratically chosen collective bargaining representative of a unit of University of Hawaii ("University") employees. HGEA's Separate Concise Statement of Facts ("Facts") ¶4.  Unit employees may become HGEA members "by signing a membership card that authorizes the deduction of union dues from their pay."  *Id.* ¶7.

Employees "are not required to become members of HGEA or authorize dues deductions as a condition of employment."  *Id.* ¶8.  Under Hawaii law, employees who have chosen to become union members may resign from membership at any time.  HRS §89-3 (employees have "right to refrain from any or all" union participation).  Moreover, HGEA must "represent[] the interests of all

… employees" in the bargaining unit "without regard to [HGEA] membership."
HRS §89-8(a); *Poe v. Hawaii Labor Relations Bd.*, 105 Haw. 97, 101, 104 (2004).

University employees are paid through DAGS.  Facts ¶6.  DAGS deducts
union dues for union members who authorize deductions and remits those dues to
HGEA.  *Id.* ¶¶6, 7, 9, 12; HRS §89-4(b) (public employer deducts dues "upon
written authorization by an employee").  The State plays no role in determining the
contents of HGEA membership cards or what dues HGEA members pay.  Facts
¶9; HRS §89-3 (employees have "right of self-organization" and right to "assist
any employee organization … free from interference, restraint, or coercion" by
employer); HRS §89-13(a) (public employers cannot "interfere, or assist in the …
administration of any employee organization").

Prior to June 27, 2018, Hawaii state law and U.S. Supreme Court precedent
permitted public employers to require non-union-members to pay fair-share fees to
their union representatives.  *See* HRS §89-4(a); *Abood v. Detroit Bd. of Educ.*, 431
U.S. 209 (1977).  Under *Abood*, fair-share fees could cover nonmembers' share of
union costs germane to collective bargaining representation, but not political or
ideological activities.  431 U.S. at 235-36; *see* HRS §89-4(a).  Nonmembers paid
fair-share fees that were about 75% of HGEA membership dues.  Facts ¶13.

In *Janus I* (June 27, 2018), the Supreme Court held that *Abood* "is now
overruled" and that the collection of mandatory fair-share fees from nonmember
public employees "violates the First Amendment and cannot continue."  138 S.Ct.
at 2486.  Defendants immediately stopped collecting fair-share fees.  Facts ¶13.

**b.**  Plaintiff is a University employee.  *Id.* ¶5.  She chose to become an

HGEA member and voluntarily signed a written agreement in 1995 authorizing the deduction of union dues. *Id.* ¶¶7, 8, 11. There is no evidence that the existence of fair-share fees influenced her choice. DAGS made dues deductions from Plaintiff's wages pursuant to her voluntary authorization. *Id.* ¶12. In return, Plaintiff received membership rights, including the right to run for union office, vote in union elections, and participate in union affairs. *Id.* ¶10. She also had access to member benefits, including discounts on goods and services. *Id.* ¶24.

On July 6, 2018, Plaintiff received an email from the University stating that, in response to the recent *Janus I* decision, DAGS had stopped fair-share fee deductions for nonmembers. *Id.* ¶14 & Ex. 2 (Dkt. 61-3). Plaintiff then emailed HGEA to "verify" that she was not a member. Facts Ex. 2. HGEA staff responded that Plaintiff had been a member since she signed her 1995 membership agreement. *Id.* In a subsequent email, HGEA agent Lorena Kauhi noted that the state had recently passed legislation known as Act 7 "designating a 'window' period where active members can elect to discontinue dues deductions," and stated, "Since your records show that you did activate your membership in 1995, you'd be subject to this window." *Id.*

Hawaii Act 7, enacted on April 24, 2018, amended HRS §89-4(c) to create an annual window period for union members to end dues deductions. When Act 7 was first enacted, HGEA incorrectly assumed it applied to all current HGEA members. Facts ¶31. For reasons described below, however, HGEA never applied Act 7 to Plaintiff. *Id.* ¶35.

On July 14, 2018, Plaintiff sent a letter to HGEA's Hawaii Island Division

resigning her membership and asking that her dues end. *Id.* ¶15.  Under HGEA policy, island offices forward such letters to HGEA's Fiscal Office on Oahu, which addresses such requests. *Id.* ¶¶25-26.  As the result of an inadvertent administrative error or mail lost in transit, however, HGEA's Fiscal Office never received Plaintiff's letter. *Id.* ¶¶27-28.

In August 2018, HGEA reevaluated Act 7 and determined that the statute does *not* apply retroactively to public employees who became union members before Act 7's April 24, 2018 effective date. *Id.* ¶32.  On August 15, 2018, HGEA's Fiscal Office instructed DAGS to end dues deductions for all employees who had requested that their dues deductions end but whose deductions had continued after Act 7's enactment. *Id.* ¶33.  HGEA also sent checks to each of these employees refunding all dues that had been deducted since they had asked that deductions end. *Id.*  HGEA did not include Plaintiff in this group because HGEA's Fiscal Office was unaware of her request to end deductions. *Id.* ¶34.  Otherwise Plaintiff would have been included. *Id.*

On December 20, 2018, Plaintiff filed her complaint in this action.  HGEA's leadership thereby learned that Plaintiff's request to end deductions had not been processed. *Id.* ¶29.  HGEA promptly instructed DAGS to end deductions, and Plaintiff's deductions ended, on January 9, 2019. *Id.* ¶¶16, 30.  On January 10, 2019, HGEA sent Plaintiff an unconditional refund of the $402.60 in dues that had been deducted from her pay for the period covering July 1, 2018 forward. *Id.* ¶¶17-18.  After Plaintiff informed HGEA that she had not cashed the check, HGEA reissued to Plaintiff an unconditional refund check of $442.86, covering all

dues deducted for the period July 1, 2018 forward and any possible interest. *Id.* ¶¶19-22.  Plaintiff is no longer a member of HGEA and no further dues will be deducted from her pay unless she authorizes deductions again. *Id.* ¶23

    **c.**  On May 21, 2019, this Court dismissed Count II of Plaintiff's complaint. Dkt. 46.  In the remaining Count I, Plaintiff asserts a single claim under 42 U.S.C. §1983 against HGEA, the University, and Hawaii's Attorney General, alleging that Defendants are violating her First Amendment rights by "refusing to allow [Plaintiff] to withdraw from the union and continuing to deduct her dues." Complaint at 9.  Plaintiff further contends that her consent to dues deductions "was not 'freely given' because it was given based on an unconstitutional choice between union membership or the payment of union agency fees without the benefit of union membership." *Id.* ¶48.  She seeks an injunction ending her union membership and dues deductions, a declaration that HRS §§89-4(a) and (c) are unconstitutional, and "damages in the amount of all dues deducted and remitted to HGEA during her employment …."  Complaint ¶¶49-54; *id.* Prayer for Relief ¶¶a-j.  Plaintiff's summary judgment motion (Dkt. 60) seeks the same relief.

## LEGAL STANDARD

    Summary judgment is proper where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  FRCP 56(a).  Rule 56 "mandates the entry of summary judgment … against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

# ARGUMENT

## I.     Plaintiff's Claim for Prospective Relief Is Moot.

Plaintiff seeks declaratory and injunctive relief ending her union membership and dues deductions and declaring that application of HRS §§89-4(a) and (c) going forward is unconstitutional.  Complaint ¶¶49-52; *id.* Prayer ¶¶b, e-f, i-j; Dkt. 60.[1]  This claim is moot.

A plaintiff's claim is moot "when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *Rosebrock v. Mathis*, 745 F.3d 963, 971 (9th Cir. 2014); *Am. Rivers v. Nat'l Marine Fisheries Serv.*, 126 F.3d 1118, 1123 (9th Cir. 1997).  Because Plaintiff sues only on behalf of herself, she is no longer an HGEA member, and her dues deductions already ended, her claim for prospective relief is moot.

"[N]umerous courts have ruled that cases similar to this one" seeking prospective relief challenging dues deductions "are moot once the dues collection has ended." *Mayer v. Wallingford-Swarthmore Sch. Dist.*, __ F.Supp.3d ___, 2019 WL 4674397, at *3 (E.D. Pa. Sept. 24, 2019); *see id.* n.27 (citing numerous

---

[1] HRS §89-4(*a*) provides that public employers will deduct from payroll union dues for each union "member" and fair-share fees from each "nonmember." The authorization to deduct fair-share fees from nonmembers was never applied to Plaintiff (who paid dues as a union member, Facts ¶12), and that statutory provision no longer has any force following *Janus I*. Facts ¶13 (undisputed that State immediately stopped deducting fair-share fees from nonmembers following *Janus I*).  HRS §89-4(*c*) was recently amended by Hawaii Act 7, but Act 7 was never applied to Plaintiff.  Facts ¶35; *infra* at 19-21.

cases).[2]  Because Plaintiff's claim for prospective relief does not present a live controversy, it should be dismissed.  *See Summers v. Earth Island Inst.*, 555 U.S. 488, 496 (2009); *City of Los Angeles v. Lyons*, 461 U.S. 95, 101-02 (1983).

The voluntary-cessation doctrine does not save Plaintiff's claim because there is no reasonable possibility the conduct Plaintiff challenges could recur.  For Plaintiff to pay further dues, she would have to rejoin HGEA and authorize dues deductions again, yet she has made clear she does not wish to do so.  *See Babb*, 378 F.Supp.3d at 886.  Moreover, the circumstances that Plaintiff (incorrectly) contends made her prior consent to dues deductions not "freely given" – the existence of fair-share fees for nonmembers – no longer exist.  Facts ¶13.  It is thus "absolutely clear that the allegedly wrongful behavior" – deduction of dues based on consent Plaintiff gave when nonmembers paid fair-share fees – "[can]not reasonably be expected to recur."  *Rosebrock*, 745 F.3d at 971.

Nor does the capable-of-repetition-yet-evading-review doctrine apply.  That doctrine requires that Plaintiff *herself* would be "subject to the complained-of conduct in the future," which is implausible for the reasons stated.  *Johnson v.*

---

[2] *See also Oliver v. SEIU Local 668*, __ F.Supp.3d ___, 2019 WL 5964778, at *7 (E.D. Pa. Nov. 12, 2019) (former union member's "claim[] for declaratory and injunctive relief … suffers from lack of standing and mootness"); *Seager v. United Teachers Los Angeles*, 2019 WL 3822001, at *2 (C.D. Cal. Aug. 14, 2019) (where union had processed plaintiff's revocation of her dues authorization "Plaintiff's claims for prospective relief from further dues deductions and her request for relief from further enforcement of [state law regarding dues deductions] are moot"); *Babb v. Cal. Teachers Ass'n*, 378 F.Supp.3d 857, 886 (C.D. Cal. 2019) (claim moot where public employee "would have to rejoin his union for his claim to be live, which, given his representations in this lawsuit, seems a remote possibility").

*Rancho Santiago Cmty. Coll. Dist.*, 623 F.3d 1011, 1021 (9th Cir. 2010).[3]

## II.   Pre-Resignation Dues Deductions Pursuant to Plaintiff's Voluntary Membership Agreement Did Not Violate Her First Amendment Rights.

### A. Plaintiff voluntarily authorized dues deductions.

Plaintiff's damages claim for *pre*-resignation dues fails because she agreed to pay those dues (and received consideration in return).  Plaintiff stipulated that she signed an HGEA membership agreement in 1995 "authoriz[ing] the deduction of union dues from [her] pay."  Facts ¶¶7, 11 & Ex. 1 (Dkt. 61-2).

The First Amendment prohibits the government from *compelling* an individual to subsidize another private party's expressive activities.  *See, e.g.*, *Janus I*, 138 S.Ct. at 2464 ("*compelled* subsidization of private speech … impinges on First Amendment rights") (emphasis added).  Plaintiff's choice to join HGEA and authorize dues deductions was not government-compelled; it was voluntary, expressive activity that is protected, not proscribed, by the First Amendment.  *See, e.g.*, *Buckley v. Valeo*, 424 U.S. 1, 16 (1976).  "Where the employee has a choice of union membership and the employee chooses to join, the union membership money is not coerced.  The employee is a union member voluntarily."  *Kidwell v.*

---

[3] Plaintiff relies on *Fisk v. Inslee*, 759 F.App'x 632 (9th Cir. 2019), and *Roe v. Wade*, 410 U.S. 113, 121, 125 (1973), but those cases were class actions in which prospective class members remained subject to the challenged conduct.  In *Knox v. SEIU, Local 1000*, 567 U.S. 298, 307 (2012), the defendant sent a notice offering (but not actually providing) a refund to class members, and there was "still a live controversy" as to the adequacy of that notice.  And in *Super Tire Eng'g Co. v. McCorkle*, 416 U.S. 115, 125 (1974), the plaintiff employers *themselves* continued to be subject to the government action they challenged.

*Transp. Commc'ns Int'l Union*, 946 F.2d 283, 292-93 (4th Cir. 1991).[4]  Thus, dues

deduction pursuant to Plaintiff's own authorization did not violate her First

Amendment rights.  *See Oliver*, 2019 WL 5964778, at *2-3 ("Plaintiff's voluntary

choice to join [Union] defeats her claim for damages.") (capitalization altered).

Further, by voluntarily agreeing to pay dues through payroll deductions in

exchange for access to the rights and benefits of union membership, *see* Facts ¶¶8,

10, 11, 24, Plaintiff entered into an enforceable contract with HGEA, *see N.L.R.B.*

*v. U.S. Postal Serv.*, 827 F.2d 548, 554 (9th Cir. 1987) ("dues-checkoff

authorization is a contract").  "A party's duty to perform even a wholly executory

contract is not excused merely because he decides that he no longer wants the

consideration for which he has bargained.…"  *Id.*[5]

---

[4] *See Anderson v. SEIU Local 503*, __ F.Supp.3d. ___, 2019 WL 4246688, at *3 (D. Or. Sept. 4, 2019) (same); *cf. Masters v. Screen Actors Guild*, 2004 WL 3203950, at *5 n.6 (C.D. Cal. Dec. 8, 2004) ("a union is entitled to require, as a condition of membership, that members pay a fee that covers the costs of both the union's non-representational and representational activities"); *Farrell v. Int'l Ass'n of Firefighters*, 781 F.Supp. 647, 649 (N.D. Cal. 1992) (rejecting First Amendment claims brought by public sector union members).  Any pressure that union-represented employees may feel to join the union that represents their bargaining units is "no different from the pressure to join a majority party that persons in the minority always feel" and "does not create an unconstitutional inhibition on associational freedom."  *Minn. State Bd. v. Knight*, 465 U.S. 271, 290 (1984).

[5] *See also Belgau v. Inslee*, 2018 WL 4931602, at *5 (W.D. Wash. Oct. 11, 2018) ("*Belgau I*") ("Here, unlike in *Janus*, the Plaintiffs entered into a contract with the Union to be Union members and agreed in that contract to pay Union dues .…"); *Fisk v. Inslee*, 2017 WL 4619223, at *4 (W.D. Wash. Oct. 16, 2017), *aff'd*, 759 F.App'x 632 (9th Cir. 2019); *Cohen v. Cowles Media Co.*, 501 U.S. 663, 672 (1991) (First Amendment did not preclude enforcement of newspaper's promise not to reveal source).

As every court to consider the issue has agreed, *Janus I* did not change the law governing the formation and enforcement of voluntary contracts between unions and their members.  *See Seager*, 2019 WL 3822001, at *2 (following "growing consensus of authority on the issue" in rejecting "First Amendment claim for return of dues paid pursuant to [plaintiff's] voluntary union membership agreement"); *Oliver*, 2019 WL 5964778, at *2-3 (citing cases).  The question in *Janus I* was whether it was consistent with the First Amendment for the State to compel *nonmembers* of a union – *i.e.*, individuals who had *not* affirmatively chosen to join a union and had *not* affirmatively chosen to enter into a contract to secure member rights and benefits in exchange for paying dues – to pay fees to a union as a condition of government employment.  138 S.Ct. at 2459-60.

Plaintiff's voluntary decision to choose union membership and commit to paying dues in exchange for membership rights and benefits was completely different from the compelled nonmember payments at issue in *Janus I*.  Every court to have considered the issue has agreed that "*Janus* says nothing about people [who] join a Union, agree to pay dues, and then later change their mind about paying union dues."  *Belgau I*, 2018 WL 4931602, at *5, *subsequent order*, 359 F.Supp.3d 1000, 1016 (W.D. Wash. 2019) ("*Belgau II*") ("*Janus* does not apply here – Janus was not a union member, unlike the Plaintiffs here, and Janus did not agree to a dues deduction, unlike the Plaintiffs here.").[6]

---

[6] *See Seager*, 2019 WL 3822001, at *2; *Smith v. Superior Court*, 2018 WL 6072806, at *1 (N.D. Cal. Nov. 16, 2018) ("*Smith I*"), *subsequent order*, *Smith v. Bieker*, 2019 WL 2476679, at *2 (N.D. Cal. June 13, 2019) ("*Smith II*") ("*Janus*

## B. Plaintiff's contention that her consent to pay dues was not "freely given" is meritless.

Plaintiff's claim for pre-resignation damages rests on her contention that her consent to join HGEA and pay dues "was not 'freely given' because it was given based on an unconstitutional choice between union membership or the payment of union agency fees without the benefit of union membership."  Complaint ¶48. Plaintiff has provided no evidence that she was even aware that nonmembers paid fair-share fees when she chose to join HGEA, or that the existence of fair-share fees had any effect on her decision.  That disposes of her argument.

Even if Plaintiff had presented such evidence, her claim would still fail. Before *Janus I*, nonmembers paid fair-share fees that were on average only 75% of the dues that Plaintiff agreed to pay as a union member in exchange for membership rights and benefits not available to nonmembers.  Facts ¶¶10, 13, 24. The fact that nonmembers paid less did not force Plaintiff to join HGEA and pay more.  *See Oliver*, 2019 WL 5964778, at *2 ("It is difficult to comprehend how Plaintiff can complain that she was compelled to join the Union in violation of her

---

did not concern the relationship of unions and members; it concerned the relationship of unions and non-members."); *Anderson*, 2019 WL 4246688, at *3 ("[B]ecause Plaintiffs were voluntary union members, *Janus* does not apply."); *O'Callaghan v. Regents of Univ. of Cal.*, 2019 WL 2635585, at *3 (C.D. Cal. June 10, 2019) ("[N]othing in *Janus*'s holding requires unions to cease deductions for individuals who have affirmatively chosen to become union members and accept the terms of a contract ...."); *Cooley v. Cal. Statewide Law Enforcement Ass'n*, 2019 WL 331170, at *3 (E.D. Cal. Jan. 25, 2019) ("*Cooley I*") ("Mr. Cooley's alleged harm stems from his previous consent to pay union membership dues, not from a compulsory nonmember agency fee.  Thus, on its face, *Janus* does not provide the relief Mr. Cooley seeks."), *subsequent order*, 385 F.Supp.3d 1077, 1079 (E.D. Cal. 2019) ("*Cooley II*") ("The relationship between unions and their members was not at issue in *Janus*.").

First Amendment right of free association" where "[t]here was no legal compulsion for her to join, and the economic advantage in declining membership and paying an agency fee would have been self-evident."); *Seager*, 2019 WL 3822001, at *2; *Anderson*, 2019 WL 4246688, at *3 (rejecting argument that existence of fair-share fees "'coerced' [plaintiffs] into membership"); *Babb*, 378 F.Supp.3d 877 ("Plaintiffs voluntarily chose to pay membership dues in exchange for certain benefits, and '[t]he fact that plaintiffs would not have opted to pay union membership fees if *Janus* had been the law at the time of their decision does not mean their decision was therefore coerced.'") (quoting *Crockett v. NEA-Alaska*, 367 F.Supp.3d 996, 1008 (D. Alaska 2019)); *Bermudez v. SEIU Local 521*, 2019 WL 1615414, at *2 (N.D. Cal. Apr. 16, 2019) (plaintiffs' pre-*Janus* "decision to pay dues was not coerced and payment was a valid contractual term").

Plaintiff complains that her membership/dues agreement did not expressly mention her First Amendment rights. Plf's Memo (Dkt. 60-1) at 7. But even "assum[ing] ... an agreement between private parties to restrict speech implicates the first amendment," a voluntary "agreement [that] clearly sets forth the restrictions" is enforceable without the need for "the talismanic recital of the words 'first amendment.'" *Perricone v. Perricone*, 292 Conn. 187, 210 & n.22 (2009); *see id.* at 209 n.21 (collecting cases); *Nat'l Abortion Fed'n v. Ctr. for Med. Progress*, 685 F.App'x 623, 626 (9th Cir. 2017).

Moreover, it is well-established that parties cannot rescind their contractual commitments based on later changes in the law affecting potential *alternatives* to entering the contract, "even when the change is based on constitutional principles."

13

*Coltec Industries, Inc. v. Hobgood*, 280 F.3d 262, 277 (3d Cir. 2002) (denying rescission of contract).  Even in cases involving plea agreements – contracts that waive a person's constitutional rights, *Puckett v. United States*, 556 U.S. 129, 137 (2009) – the fact that a defendant may have accepted a plea agreement in part to avoid an alternative later deemed unconstitutional does not provide a basis for voiding that agreement.  *See Brady v. United States*, 397 U.S. 742, 757 (1970) (plea agreement entered to avoid having to face death penalty under statute later held unconstitutional by Supreme Court was enforceable, because "a voluntary plea of guilty intelligently made *in the light of the then applicable law* does not become vulnerable because later judicial decisions indicate that the plea rested on a faulty premise") (emphasis added); *Dingle v. Stevenson*, 840 F.3d 171, 175-76 (4th Cir. 2016) (same; "Contracts in general are a bet on the future," and later change in law regarding alternative to contract "does not undermine the voluntariness" of the agreement).  These authorities foreclose Plaintiff's contention that she could not have "freely" chosen union membership because nonmembers paid *lower* fair-share fees at the time.  *See Smith II*, 2019 WL 2476679, at *2 ("changes in intervening law – even constitutional law – do not invalidate a contract"); *Oliver*, 2019 WL 5964778, at *3.[7]

---

[7] Plaintiff cites inapposite cases involving fines collected under statutes later held to have criminalized "conduct that cannot constitutionally be punished in the first instance." *United States v. Lewis*, 342 F. Supp. 833, 835 (E.D. La. 1972); *see* Plf's Memo at 8-9.  Plaintiff never paid any fine, nor was she ever "punished" for anything, let alone for any constitutionally protected conduct. Those cases say nothing about voluntary private contracts to pay money in exchange for consideration, like Plaintiff's membership/dues agreement.

Plaintiff's argument that her dues deduction agreement is retroactively voidable because of "mutual mistake," Plf's Memo at 17-18, is similarly meritless. There is no evidence that either party harbored any mistaken understanding of the contract Plaintiff signed: She voluntarily agreed to join the union and authorized dues deductions in exchange for membership rights and benefits she then received. Facts ¶¶7-8, 10-11, 24. A later change in the law regarding alternatives to a contract does not make that contract voidable, for all the reasons discussed above. *See also* Restatement (Second) of Contracts §151 (1981), cmt. a ("mutual mistake" "must relate to the facts as they exist at the time of the making of the contract," not predictions regarding future changes in law); *cf. Janus v. AFSMCE, Council 31*, __ F.3d __, 2019 WL 5704367, at *11 (7th Cir. Nov. 5, 2019) ("*Janus II*") (no party "made any mistake about the state of the law during the years" when fair-share fees were collected under *Abood*).

Finally, even if Plaintiff's voluntary membership/dues agreement were subject to attack because it was signed before *Janus I* (it is not), Plaintiff's claim for a refund of dues she paid *before* she resigned her membership and asked that dues deductions end would be barred by HGEA's good faith defense. *See Clement v. City of Glendale*, 518 F.3d 1090, 1097 (9th Cir. 2008) (good faith defense precluded §1983 claim against private party that had done "its best to follow the law" and where its actions "appeared to be permissible under both local ordinance and state law"). Every court that has considered the issue has agreed that a good faith defense precludes claims by *non*members seeking to recover fair-share fees they were forced to pay without their consent before *Janus I*. *See Janus II*, 2019

WL 5704367, at *9-11 & n.1 (citing cases). That same defense protects HGEA for relying on Plaintiff's *affirmative voluntary agreement* to pay dues in exchange for membership. *See Crockett*, 367 F.Supp.3d at 1008 ("Given that the union members' claim [for a dues refund] is ... based upon pre-*Janus* collection of fair-share fees, ... the good-faith defense applies here as well."); *Babb*, 378 F.Supp.3d at 876 (same); *Oliver*, 2019 WL 5964778, at *7 (same).

### C. Plaintiff's claim for pre-resignation damages also fails for lack of state action.

There is another fundamental problem with Plaintiff's First Amendment challenge to her own dues authorization: The State's honoring of Plaintiff's voluntary, private agreement with HGEA does not constitute "state action" subject to First Amendment scrutiny. To state a claim under 42 U.S.C. §1983, "'the conduct allegedly causing the deprivation of a federal right [must] be fairly attributable to the State.'" *Ohno v. Yasuma*, 723 F.3d 984, 993 (9th Cir. 2013) (citation omitted). If the conduct Plaintiff challenges "is not so attributable, then there is no 'state action' and no violation" of the First Amendment. *Id.*

The state conduct at issue here involves, at most, DAGS's compliance with the terms of the contractual dues deduction agreement Plaintiff voluntarily entered into with HGEA. Neither the terms of that private agreement nor DAGS's ministerial compliance with that agreement constitute state action subject to a First Amendment §1983 challenge. *See Oliver*, 2019 WL 5964778, at *4-6; *Belgau II*, 359 F.Supp.3d at 1012-15; *Cooley II*, 385 F.Supp.3d at 1081-82; *Bain v. Cal. Teachers Ass'n*, 156 F.Supp.3d 1142, 1151-54 (C.D. Cal. 2015). Plaintiff was not

required to join HGEA as a condition of her employment, Facts ¶8; she chose to do so.  Likewise, Hawaii law applicable to Plaintiff did not specify the terms of voluntary dues authorization agreements between unions and their members; it simply required employers like the University to comply with those agreements. *See* HRS §89-4(b) ("employer shall, upon written authorization by an employee, … deduct from the payroll of the employee the amount of membership dues … and shall remit the amount to the employee organization designated by the employee"); HRS §89-4(c) ("employer shall continue all payroll assignments authorized by an employee … until notification is submitted by an employee to discontinue the employee's assignments") (version applicable to Plaintiff, in effect before Hawaii Act 7).[8]

Where a government actor has no role in setting the terms of the dues authorization agreements between a union and its members, but merely honors those agreements according to their terms, the state action that is a prerequisite for a First Amendment claim is absent.  *Oliver*, 2019 WL 5964778, at *4-6; *Belgau II*, 359 F.Supp.3d at 1012-15; *see also Blum v. Yaretsky*, 457 U.S. 991, 1005 (1982) (that a government actor may respond to a private party's actions "by adjusting [its own conduct] does not render it *responsible* for those actions") (emphasis in original); *Roberts v. AT&T Mobility LLC*, 877 F.3d 833, 844 (9th Cir. 2017) (court enforcement of private agreement to arbitrate claims is not state action that permits

---

[8] As discussed *infra* at 22-24, HRS §89-4(c) was amended by Hawaii Act 7, but that amendment does not apply retroactively to membership/dues authorization agreements like Plaintiff's signed before Act 7's effective date.

§1983 suit against party to agreement; "Because no federal law required Plaintiffs to waive their right to litigate, there is no state action simply because the state enforces that private agreement.") (quotation marks, brackets omitted).[9]

## III. Plaintiff's Post-Resignation Damages Claim Is Moot and Meritless.

### A. Plaintiff's claim for post-resignation damages is moot.

Plaintiff's claim for damages for *post*-resignation deductions no longer presents a live, justiciable controversy, because she has already received a full refund for those deductions, plus an additional 10% to cover any interest. Facts ¶¶17-22, 29-30. Plaintiff thus "ha[s] no present need for remedial relief from the federal courts" with respect to post-resignation dues, and her claim for relief with respect to those dues is moot. *S-1 v. Spangler*, 832 F.2d 294, 297 (4th Cir. 1987) (dismissing §1983 action as moot where plaintiffs had obtained tuition reimbursement that was "ultimate object of their action").

In indistinguishable circumstances, courts have held that claims challenging the deduction of union dues following the plaintiff's resignation were moot because the union had refunded those dues. *See Weyandt v. Pennsylvania State Corr. Officers Ass'ns*, 2019 WL 5191103, at *4 (M.D. Pa. Oct. 15, 2019) (claims challenging post-resignation dues payments moot because "Plaintiffs have been allowed to resign their union memberships as requested" and "[t]hey were also

---

[9] Plaintiff's claim for a refund of dues she paid before December 20, 2016, two years before filing her complaint, is also barred by the statute of limitations. *See Beckstrand v. Read*, 680 F.App'x 609, 610 (9th Cir. 2017); HRS §657-7.

fully refunded for the dues they paid in the time period between revoking their dues authorizations and the date dues were no longer deducted from their pay").[10] The same result is required here.

Plaintiff's refund was not the result of a "gimmick[]" or "pick[] off" strategy. Plf's Memo at 12-13. HGEA made an inadvertent administrative error that resulted in continued deductions after Plaintiff requested that deductions end. Facts ¶¶27-28. As soon as HGEA learned of that error, it corrected it by providing a full unconditional refund of those deductions, plus more than any interest that could have accrued. *Id.* ¶¶16-22, 29-30. There is thus no remaining case or controversy for the Court to resolve as to the post-resignation time period.

### B. Plaintiff's post-resignation deductions resulting from HGEA's administrative error did not violate the First Amendment.

If Plaintiff's challenge to post-resignation deductions were not moot, it would fail for lack of state action. A private entity like HGEA can only be held liable under §1983 if "(1) [the private entity] acted under color of state law, and (2) if a constitutional violation occurred, the violation was caused by an official policy or custom of [the private entity]." *Tsao v. Desert Palace, Inc.*, 698 F.3d 1128, 1139 (9th Cir. 2012) (requirements for §1983 claims against municipality in *Monell v. Dep't of Soc. Servs. of City of NY*, 436 U.S. 658, 691 (1978), apply to

---

[10] *See Mayer*, 2019 WL 4674397, at *3 (same); *Molina v. Pennsylvania Social Serv. Union, SEIU*, 392 F.Supp.3d 469, 482 (M.D. Pa. 2019) (same); *see also Lamberty v. Connecticut State Police Union*, 2018 WL 5115559, at *6-8 (D. Conn. Oct. 19, 2018) (claims challenging fair-share fees were moot because defendant union refunded all fair-share fees that had been deducted, plus interest).

"suits against private entities under §1983").  Plaintiff can make neither showing.

First, by failing to inform DAGS that Plaintiff had resigned her membership and requested that dues deduction end in July 2018, HGEA did not act under color of state law.  To the contrary, as the result of its inadvertent administrative error, HGEA acted contrary to HRS §89-4(c), which requires that a public employee's "exclusive representative shall provide a copy of the employee's written notification [to discontinue deductions] to the employer within ten business days of receipt from the employee."

A plaintiff who challenges action taken by a private actor in *violation* of state law cannot maintain a §1983 claim because she cannot show that the private action was carried out pursuant to "state policy."  *Collins v. Womancare*, 878 F.2d 1145, 1151 (9th Cir. 1989).[11]  Plaintiff's §1983 claim for post-resignation deductions fails because those deductions resulted from HGEA's (inadvertent) failure to timely inform DAGS of Plaintiff's request, contrary to Hawaii law.

Second, Plaintiff's claim independently fails because the continued deduction of her dues after she asked that they stop was not caused by any "official policy, custom, or pattern" of HGEA.  *Tsao*, 698 F.3d at 1143 (quotation marks omitted).  "A 'policy' is a *deliberate choice* to follow a course of action made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question."  *Id.* (emphasis added;

---

[11] *See, e.g.*, *Ouzts v. Md. Nat'l Ins. Co.*, 505 F.2d 547, 553-54 (9th Cir. 1974) (en banc) (private actor who failed to comply with state statute was not acting under color of state law); *Hassett v. Lemay Bank & Trust Co.*, 851 F.2d 1127, 1129-30 (8th Cir. 1988).

ellipsis, some quotation marks omitted).  Thus, to succeed on her §1983 claim, Plaintiff must show that a "deliberate action attributable to [HGEA] itself is the 'moving force' behind the plaintiff's deprivation of federal rights." *Bd. of Cnty. Comm'rs v. Brown,* 520 U.S. 397, 400 (1997) (quoting *Monell,* 436 U.S. at 694); *see Tsao*, 698 F.3d at 1146 ("Under *Monell*, a plaintiff must also show that the policy at issued was the 'actionable cause' of the constitutional violation, which requires showing both but for and proximate causation") (citation omitted).

Deductions continued after Plaintiff's resignation as the result of HGEA's inadvertent administrative error or mail lost in transit, not any deliberate act of the government or HGEA policy.  Facts ¶¶26-29.  HGEA's policy required its island offices to forward any member requests to resign or end dues deductions to HGEA's Fiscal Office.  *Id.* ¶¶25-26.  In conflict with this policy, the Fiscal Office never received Plaintiff's resignation letter from the Hawaii Island Division.  *Id.* ¶28.  The failure to transmit the letter to the Fiscal Office was not deliberate but rather resulted from a clerical error or mail lost in transit.  *Id.*; *see Tsao*, 698 F.3d at 1144 (where "gap in communication" between two departments of private entity defendant "led to the alleged constitutional violation," §1983 claim failed because violation was not caused by defendant's policy).  Administrative errors of private parties do not violate the First Amendment.[12]

-----

[12] *See, e.g.*, *Sutton v. City of Philadelphia*, 21 F.Supp.3d 474, 484-85 (E.D. Pa. 2014) (dismissing prisoner's First Amendment claims challenging private food vendor's repeated failures to provide vegetarian meals, because missed meals resulted from "an administrative error," not defendant's official policy).

## C. If there had been no administrative error, the post-resignation deductions still would not have violated the First Amendment.

If HGEA's inadvertent administrative error or mail lost in transit had not occurred, Plaintiff's §1983 claim challenging post-resignation deductions would still fail. Had Plaintiff's resignation letter been received by HGEA's Fiscal Office in July 2018, deductions would have continued for one month based on HGEA's incorrect interpretation of Hawaii Act 7. Facts ¶¶31-34. Deductions would have ended, and Plaintiff would have received a full refund, in August 2018 when HGEA correctly determined that Hawaii Act 7 does not apply retroactively to employees like Plaintiff who joined the union before Act 7's effective date. *Id.* ¶¶32, 34. As explained below, any post-resignation deductions made before August 2018 based on HGEA's prior incorrect interpretation of Act 7 would have *violated Hawaii law*, and thus would not have supported Plaintiff's §1983 claim.

Under Hawaii law, public employees have both "the right to form, join, or assist any employee organization" and "the right to refrain from any or all of such activities." HRS §89-3. (Section 89-3 recognizes an exception for fair-share fees, but Plaintiff never paid a fair-share fee, and fair-share fees ended for all public employees immediately after *Janus I*. Facts ¶13.) Thus, as a matter of Hawaii law, at the time Plaintiff asked that dues deductions end, HRS §89-3 protected her "right to refrain from any and all" participation in, or support of, HGEA.

Plaintiff contends that Hawaii Act 7 prevented her from ending her dues deductions, and she challenges Act 7 as unconstitutional. But Plaintiff has no standing to challenge Act 7 because it does not apply to her. *See Stoianoff v. State*

*of Mont.*, 695 F.2d 1214, 1223 (9th Cir. 1983).  Act 7 does not apply retroactively to individuals like Plaintiff who joined HGEA and authorized dues deductions *before* Act 7 was enacted.  Under Hawaii law, "[n]o law has any retrospective operation, unless otherwise expressed or obviously intended."  HRS §1-3; *Clark v. Cassidy*, 64 Haw. 74, 77 (1981).  Act 7 was enacted on April 24, 2018, and provided that it "shall take effect upon its approval."  2018 Haw. Laws, Act 7 (H.B. 1725), §3.  In *Ahn v. Liberty Mutual Fire Ins. Co.*, 126 Haw. 1, 9 (2011), the Hawaii Supreme Court held that a statute with precisely this language "does not express an intent to have retrospective application."

The rule against retrospective operation "is particularly applicable where," as here, "the statute or amendment involves substantive rights," i.e., "rights which take away or impair vested rights acquired under existing laws, or create a new obligation, impose a new duty, or attach a new disability in respect to transactions or considerations already past …."  *Clark*, 64 Haw. at 77 (quotations, citations omitted).  Before Act 7, union members like Plaintiff – who never agreed that their authorization of dues deductions could not be revoked at will – had the right to end dues deductions upon request.  If Act 7 were to apply to such members, it would create a new obligation to continue paying dues until an annual window period that could not have been part of the members' dues deduction agreement.  That change in substantive rights cannot be applied retroactively without "a clear legislative expression that such [retroactive] operation is intended."  *Id.*

Were there any ambiguity, the Court should follow "the elementary rule … that every reasonable construction must be resorted to, in order to save a statute

23

from unconstitutionality." *Yamada v. Weaver*, 872 F.Supp.2d 1023, 1043 n.16 (D. Haw. 2012) (quotation, citation omitted); *see Robert D. Ferris Trust v. Planning Com'n of Cty. of Kauai*, 378 P.3d 1023, 1029 (Haw. Ct. App. 2016) ("if possible, we must interpret a statute to avoid violating constitutional provisions"). If applying Act 7 to members who signed dues authorization agreements before Act 7 was enacted would raise constitutional concerns (as Plaintiff argues), that statute should be interpreted to avoid those concerns. *See State v. Jordan*, 72 Haw. 597, 599-600 (1992) (declining to interpret statute as operating retroactively, because "attach[ing] a new disability in respect to transactions … already past" would be "constitutionally suspect") (quotation, citations omitted), *overruled on other grounds*, *State v. Nakata*, 76 Haw. 360 (1994).

Thus, had HGEA intentionally rejected Plaintiff's request to end dues deductions (based on a misreading of Act 7 or for any other reason), Plaintiff's §1983 claim would fail for lack of state action. Such an intentional refusal to allow Plaintiff to end her membership and stop dues deductions would have been contrary to her state law right to refrain from union activity, and thus would not have been taken "under color of law" for purposes of §1983. *Supra* at 20.[13]

To the extent Plaintiff separately challenges her continued membership in HGEA following her request to resign, as distinct from her challenge to the

---

[13] Actions contrary to Plaintiff's state law rights under HRS §89-3 would constitute a potential "prohibited practice" under Hawaii's Collective Bargaining in Public Employment Act. HRS §89-13(b). The Hawaii Labor Relations Board has exclusive jurisdiction over state law prohibited practice claims. *See HGEA v. Lingle*, 124 Haw. 197, 206 (2010); HRS §89-14.

continued dues deductions, such a challenge also fails. *First*, the failure to process Plaintiff's resignation resulted from HGEA's inadvertent administrative error, not any action taken "under color of law" or any HGEA policy. *Supra* at 19-21. *Second*, Plaintiff cannot state a claim based on continued membership following her resignation because a private entity's internal membership decisions are not state action subject to the First Amendment. *See Hallinan v. Fraternal Order of Police of Chicago Lodge No. 7*, 570 F.3d 811, 817-18 (7th Cir. 2009) (union's decision to expel two police officers from membership was not state action; "Decisions about membership are between the Union and its … members."); HRS §89-13(a) (state may not "interfere" with internal "administration of any employee organization"). *Third*, Plaintiff has neither alleged nor established any injury resulting from any continuation of her HGEA membership distinct from her allegations of injury resulting from the ongoing deduction of dues. *Fourth*, had HGEA intentionally required Plaintiff to remain a member following her request to resign (it did not), HGEA would have committed a potential prohibited practice under Hawaii law, not taken action "under color" of state law. *See supra* at 22; HRS §89-3.

## CONCLUSION

For all these reasons, Plaintiff's Count I fails on the undisputed facts. Summary judgment should be granted in favor of all defendants.

Dated:  November 18, 2019          Respectfully submitted,

By:   */s/Matthew J. Murray*

SCOTT A. KRONLAND
MATTHEW J. MURRAY (*Pro Hac Vice*)
ALTSHULER BERZON LLP

JAMES E.T. KOSHIBA
JONATHAN E. SPIKER
KOSHIBA PRICE & GRUEBNER

*Attorneys for Defendant Hawaii Government
Employees Association / AFSCME Local 152*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a copy of the foregoing document was served electronically through CM/ECF on the following:

ROBERT H. THOMAS
1003 Bishop Street, Suite 1600
Honolulu, Hawaii 96813

BRIAN KELSEY (*Pro Hac Vice*)
JEFFREY M. SCHWAB (*Pro Hac Vice*)
Liberty Justice Center
190 South LaSalle Street, Suite 1500
Chicago, Illinois 60603
      Attorneys for Plaintiff PATRICIA GROSSMAN

DEREK T. MAYESHIRO
ELISABETH A.K. CONTRADES
LESLIE P. CHINN
2444 Dole St., Bachman Hall 110
Honolulu, HI 96822
      Attorneys for Defendant DAVID LASSNER

JAMES HALVORSON
RICHARD THOMASON
Department of the Attorney General, State of Hawaii
235 S. Beretania Street, 15th Floor
Honolulu, Hawaii 96813
      Attorneys for Defendant CLARE E. CONNORS

Dated:  November 18, 2019

By:    */s/ Matthew J. Murray*

      SCOTT A. KRONLAND
      MATTHEW J. MURRAY (*Pro Hac Vice*)
      ALTSHULER BERZON LLP

      JAMES E.T. KOSHIBA
      JONATHAN E. SPIKER
      KOSHIBA PRICE & GRUEBNER

      *Attorneys for Defendant Hawaii Government*
      *Employees Association / AFSCME Local 152*