IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| PATRICIA GROSSMAN,<br><br>       Plaintiff,<br><br>  vs.<br><br>HAWAII GOVERNMENT EMPLOYEES ASSOCIATION / AFSCME LOCAL 152; DAVID LASSNER, IN HIS OFFICIAL CAPACITY AS PRESIDENT OF THE UNIVERSITY OF HAWAII; AND CLARE E. CONNORS, IN HER OFFICIAL CAPACITY AS THE ATTORNEY GENERAL OF HAWAII,<br><br>       Defendants. | CIVIL NO. 18-cv-00493 DKW-RT<br><br>MEMORANDUM IN SUPPORT OF OPPOSITION AND CROSS MOTION FOR SUMMARY JUDMENT |

MEMORANDUM IN SUPPORT OF OPPOSITION AND
CROSS MOTION FOR SUMMARY JUDMENT

### I.   INTRODUCTION

Plaintiff Grossman is an employee of the University of Hawaii, and performs services that are bundled into Bargaining Unit 8 (which is unique to UH). See HRS § 89-6(a).

The Hawaii Governmental Employees Association (HGEA or union) is the exclusive representative of all UH employees included in BU 8, and Plaintiff joined HGEA in 1995.

17-06716/785670_1

After the Supreme Court's ruling in *Janus v AFSCME* 138 S. 2448 (2018), Plaintiff informed HGEA that she no longer wished to be a member of the union. For reasons that were not attributable to the AG, there was a delay by HGEA in processing her opt-out notification.

The instant complaint originally had two counts, the second of which was previously dismissed (Dkt. 46).

The remaining Count against all Defendants is a First Amendment claim under 42 U.S.C. § 1983.

The AG remains a named defendant in this suit based upon the Plaintiff's singular (and accurate) premise that our office ordinarily enforces and/or defends the constitutionality of state statutes (which would presumably include the amendment to HRS § 89-4(c) ("Act 7") enacted just two months prior to *Janus* in April 2018 ("Act 7"), establishing a specified window of time to stop the deduction of union dues from requesting employees' paychecks). That being the case, it is our understanding that Plaintiff's position is that an injunction is appropriate against the AG enjoining our office from ever enforcing HRS, Act 7 in the future.

For the reasons set forth below, the AG disputes that such an injunction is an appropriate remedy in this case. Further, summary judgment is appropriate because the case primarily presents questions of law.

## II.     STATEMENT OF MATERIAL UNDISPUTED FACTS

The parties' Joint Stipulation Regarding Undisputed Facts (Dkt. 57) are listed verbatim below

1. Defendant David Lassner is the President of the University of Hawaii ("University").

2. Defendant Clare E. Connors is the Attorney General for the State of Hawaii.

3. Defendant Hawaii Government Employees Association / AFSCME Local 152 ("HGEA") is a labor organization.

4. HGEA is the certified collective bargaining representative of bargaining unit of administrative, professional, and technical employees of the University known as Unit 8.

5. Plaintiff Patricia Grossman ("Grossman") is an employee of the University and member of Unit 8.

6. Employees in Unit 8 are paid through the State of Hawaii Department of Accounting and General Services ("DAGS").

7. Employees in Unit 8 may become HGEA members by signing a membership card that authorizes the deduction of union dues from their pay.

8. Employees in Unit 8 are not required to become members of HGEA or authorize dues deductions as a condition of employment.

9. DAGS relies on information provided by HGEA regarding which employees have properly authorized or cancelled dues deductions.

10. HGEA members have the right to run for union office, vote in union officer elections, and otherwise participate in HGEA's internal affairs. Nonmembers do not have these membership rights.

11. In 1995, Grossman signed the HGEA membership application card attached to the UF as Exhibit 1.

12. DAGS deducted union dues from Grossman's pay and remitted those dues to HGEA after she became a HGEA member.

13. Before June 27, 2018, non-union-members in Unit 8 paid fair-share/agency fees to HGEA to cover their share of the cost of collective bargaining negotiations and contract administration. The "chargeable" fair-share fees paid by nonmembers were on average approximately 75% of full member dues and were always lower than full member dues. After the Supreme Court issued *Janus v. AFSMCE, Council 31,* 138 S. Ct. 2448 (2018) on June 27, 2018, DAGS immediately stopped deducting, and HGEA stopped receiving, fair-share fees from nonmembers.

14. Between July 6 and July 10, 2018, Grossman exchanged emails with certain staff members at HGEA, DAGS, and the University. The email chains containing these emails are attached to the UF as Exhibit 2.

15. On or about July 14, 2018, Grossman sent a letter dated July 13, 2018 to HGEA's Hawaii Island Division office and to the University of Hawaii by certified mail, asking to resign her membership and to stop deduction of dues. The letter is attached to the UF as Exhibit 3. Grossman's letter was received by HGEA's Hawaii Island Division office on the island of Hawaii on or about July 14, 2018.

16. On January 9, 2019, HGEA notified DAGS of Grossman's request to stop dues deductions, and dues deductions from Grossman's pay ended.

17. A total of $402.60 in dues was deducted from Grossman's pay from July 10, 2018 through the time deductions stopped, covering dues for the period July 1, 2018 through December 31, 2018. Specifically, deductions of $33.55 took place on approximately the 5th and 20th of each month beginning July 20, 2018 and ending January 4, 2019. Deductions on approximately the 5th of the month covered dues of the second half of the previous month, Deductions on approximately the 20th of the month covered dues for the first half of that month.

18. On January, 10, 2019 HGEA send Grossman a check in the amount of $402.60. A copy of the check and cover letter is attached to the UF as Exhibit 4.

19. On January 23, 2019, Grossman's counsel sent a letter to HGEA counsel regarding the check. A copy of the letter is attached to the UF as Exhibit 5.

20. On January 28, 2019, HGEA sent a follow-up letter to Grossman's counsel regarding the check. A copy of that letter is attached to the UF as Exhibit 6.

21. On June 21, 2019, Grossman's counsel informed HGEA's counsel that Grossman had not cashed the check.

22. On June 28, 2019, HGEA sent Grossman a reissued check in the amount of $442.86. A copy of that reissued check and cover letter is attached to the UF as Exhibit 7.

23. Grossman is no longer a member of HGEA. No dues or other payments to HGEA are currently being deducted from her pay. HGEA has instructed DAGS and the University that dues should not be deducted from Grossman's pay in the future, and that HGEA will not accept receipt of any dues deducted from Grossman's pay, unless she chooses to join HGEA and authorizes deductions again.

**In addition, the following are additional facts supported by the declarations of HGEA representatives Maureen Wakuzawa and Lorena Kauhi attached to the union's concise statement of facts:**

24. HGEA members have access to members-only benefits, including discounts on various good services.

25. HGEA's Fiscal Office on Oahu is responsible for processing all member requests to resign union membership or end dues deductions.

26. It has consistently been HGEA's policy and practice that if one of HGEA's island division offices receives a written request from a member to resign or end dues deductions, the island office forwards that request to the Fiscal Office on Oahu for processing.

27. When HGEA's Hawaii Island Division received Grossman's resignation letter on or about July 14, 2018, the Hawaii Island Division attempted to follow HGEA policy and forward that letter to the Fiscal Office on Oahu.

28. As the result of an inadvertent administrative error or mail lost in transit, HGEA's Fiscal Office on Oahu did not receive Grossman's resignation letter.

29. HGEA's Fiscal Office first learned of Grossman's resignation letter in January 2019, after Grossman filed this lawsuit.

30. After HGEA's Fiscal Office learned of Grossman's resignation letter, HGEA promptly instructed DAGS to end Grossman's deductions, and HGEA sent Grossman an unconditional refund of all dues deducted for the period July 1, 2018 forward.

31. When Hawaii Act 7 was enacted on April 24, 2018, HGEA assumed it applied to all HGEA members.

32. In August 2018, HGEA reevaluated its interpretation of Act 7, and HGEA now interprets Act 7 as not applying to union members who signed membership and dues authorization agreements before Act 7 was enacted.

33. On August 15, 2018, HGEA's Fiscal Office instructed DAGS to stop dues deductions for all individuals of which HGEA's Fiscal Office was aware who had signed an HGEA membership and dues authorization agreement before Act 7 was enacted and who had requested that dues deductions end after Act 7 was enacted. HGEA also sent checks to each of these individuals, unconditionally refunding all dues that had been deducted from their pay after they each had asked that deductions end.

34. Grossman was not included in the list of employees whose deductions ended and who received refunds in August 2018 because the Fiscal Office was not aware that Grossman had requested to resign and end her dues deductions. Had the Fiscal Office received Grossman's resignation letter in July 2018, her deductions would have ended in August 2018 and she would have received an unconditional refund of dues deductions made after her request.

35. HGEA never applied Hawaii Act 7 to Grossman. When HGEA's Fiscal Office first was made aware of Grossman's request to resign and end dues deductions, HGEA promptly instructed DAGS to end her deductions and sent Grossman an unconditional refund of all post-resignation dues.

## III.  ARGUMENT

As noted, the AG's status as a defendant in this case is somewhat tangential. With that in mind, the Attorney General could simply focus on the "future enforcement of Act 7" claim alone, but the Attorney General also has concerns regarding several of the other claims raised in Plaintiff's pending motion and directed at the other named Defendants.

In this respect, and with due deference to the positions espoused in HGEA's and UH's briefs (almost all of which we concur with), perhaps the most concise way to address the AG's concerns is to simply concentrate directly on all seven distinct judgments requested in Plaintiff's motion, the first one of which asks the court to issue a judgment:

**a.    DECLARING that limiting the ability of Grossman to resign her union membership to a window of time was unconstitutional because she did not provide affirmative consent.**

Response: Act 7 was not actually applied to Plaintiff, making it irrelevant to this case. Additional Facts #35.

Plaintiff next requests that the Court enter a judgment:

**b.    DECLARING that Grossman's signing of the union card cannot provide a basis for her affirmative consent to waive her First Amendment rights because such authorization was based on the unconstitutional choice between paying the union as a member or paying the union as a non-member.**

Response: The majority decision in *Janus* commences as follows:

> *Under Illinois law, public employees are forced to subsidize a union, even if they choose not to join and strongly object to the positions the union takes on collective bargaining and related activities. We conclude that this arrangement violates the free speech rights **of nonmembers** by compelling them to subsidize private speech on matters of substantial concern.* (Emphasis added)

While Mr. Janus was never a union member, until recently, Ms. Grossman did in fact join HGEA (#11) and *Janus* v. *AFSCME, Council* 31, 138 S. Ct. 2448 (2018) says nothing about the First Amendment rights of union *members,* likely because, once someone joins a public union, there is no longer an issue over what the court referred to as "*compelled subsidization of private speech.*" *Id* at 2464

Plaintiff's motion further requests that the Court enter a judgment:

**c.     DECLARING that the practice by Defendant David Lassner of withholding union dues from Grossman's paycheck was unconstitutional because Grossman did not provide affirmative consent for her to do so;**

Response: In addition to the above responses, it is noteworthy that the majority decision contains the following clarifying footnote at *Id*. At 2485:

> *States can keep their labor-relations systems exactly as they are—only they cannot force nonmembers to subsidize public-sector unions. In this way, the States can follow the model of the federal government and 28 other States.*

Again, the focus of the *Janus* court was on the mandatory payment of fair-share/agency fees by nonmembers, not union dues by union members such as Plaintiff.

Plaintiff next requests that the Court enter a judgment:

785670_1                                                10

**d.     ENJOINING David Lassner from collecting union dues from public employees like Grossman who request to end their dues deduction prior to an opt-out period delineated in a collective bargaining agreement;**

Response: The University of Hawaii no longer operates its own payroll system (#11) so this request is misplaced.

Also, this is not a class action case, and Ms. Grossman is not a class representative. Instead, she's a private plaintiff seeking prospective relief and we concur that Plaintiff's claims for prospective relief are moot and should be dismissed because she has already received a full refund of all union dues deducted from her pay after she withdrew from the union, plus 10% interest. #7-22, 29-30

Plaintiff's motion further requests that the Court enter a judgment:

**e.     ENJOINING Defendant Hawaii Government Employees Association from collecting union dues from public employees like Grossman who request to end their dues deduction prior to an opt-out period delineated in a collective bargaining agreement;**

Response: See above.

Plaintiff's motion also requests that the Court enter a judgment:

**f.     Awarding DAMAGES against the Hawaii Government Employees Association for all union dues collected from Grossman since the commencement of her employment;**

Response: The cases on the retroactive effect of Supreme Court decisions cited by Plaintiff miss the mark. *Janus* simply does not address the question of reimbursement of union dues paid by former union members such as Plaintiff.

Finally, Plaintiff's motion requests that the Court enter a judgment:

**g.     ENJOINING attorney General Connors from enforcing Haw. Rev. Stat. § 89-4(c) and any other provisions of Hawaii law that require public employees to wait until a specified window of time to stop the deduction of union dues from their paychecks;**

<u>Response</u>: Once again, Act 7 is irrelevant to this case. As also noted above, this is not a class action case, and Ms. Grossman is not a class representative. Rather, she's a private plaintiff seeking prospective relief,

Lastly, the AG is confused by the following statement at page 15 of Plaintiff's memorandum in support:

> *The opt-out window Grossman was subject to is a **policy** of the State of Hawaii, embodied in **an agreement it negotiated** with the Union. This **policy** continues to impact present interests; as President Lassner, the Union, and Attorney General Connors continue to enforce it and assert its legality.*

Plaintiff cites to no authority, declaration, stipulated fact, or evidence supporting the 'negotiated agreement' assertion (which first appears on page 1 of her memorandum).

## IV.     <u>CONCLUSION</u>

Based on the above, this case should be dismissed in its entirety.

//

//

//

Alternatively, the AG's counter motion for summary judgment should be granted.

DATED:    Honolulu, Hawaii, November 18, 2019.

 /s/ Richard H. Thomason
JAMES E. HALVORSON
RICHARD H. THOMASON
Deputy Attorneys General

Attorneys for Defendant
CLARE E. CONNORS,
in her official capacity as the
Attorney General of Hawaii
