IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAIʻI

| | |
|---|---|
| PATRICIA GROSSMAN,<br><br>　　　　　Plaintiff,<br><br>　vs.<br><br>HAWAII GOVERNMENT EMPLOYEES ASSOCIATION/AFSCME LOCAL 152, *et al.*,<br><br>　　　　　Defendants. | Case No. 18-cv-00493-DKW-RT<br><br>**ORDER (1) DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT; (2) GRANTING DEFENDANTS' CROSS-MOTIONS FOR SUMMARY JUDGMENT; AND (3) DISMISSING THIS ACTION** |

The vigorously disputed issues in this case concern unions and the First Amendment. Plaintiff Patricia Grossman is a University of Hawaii (University) employee. Because she recently terminated her membership in Defendant Hawaii Governmental Employees Association (HGEA), she no longer pays any union dues. Grossman, however, moves for partial summary judgment, Dkt. No. 60, seeking reimbursement of "all union dues collected from [her]" since her employment with the University began in 1995 because, she contends, *Janus v. American Federation of State, County, & Municipal Employees, Council 31*, 138 S. Ct. 2448 (2018) effectively invalidates the union membership agreement she entered into over two decades ago. Grossman further urges this Court to strike down Haw. Rev. Stat. § 89-4(c) (as recently amended) and enjoin its enforcement because the statute

violates the First Amendment by restricting union members to an annual 30-day time window in which they may withdraw their membership. Defendants HGEA, the President of the University of Hawaii, and the Hawaii Attorney General have each filed a separate cross-motion for summary judgment, contending Grossman's claims should be dismissed on multiple grounds. Dkt. Nos. 63, 66, 68.

The Court concludes that the good faith defense bars Grossman's claim for pre-*Janus* damages. And although the record suggests that after Grossman requested to resign her HGEA membership, dues were deducted from her pay for several months, during which she was forced to remain a member pursuant to Haw. Rev. Stat. § 89-4(c), until after she filed this lawsuit, because it is undisputed that Grossman has since received the precise amount that was wrongfully deducted and because she cannot reasonably be subjected to the terms of Section 89-4(c) in the future, Grossman's claims for post-*Janus* damages and prospective equitable relief are moot. Accordingly, Grossman's motion is DENIED, and Defendants' respective motions are GRANTED.

## FACTUAL & PROCEDURAL BACKGROUND

### A.    Relevant Legal History

In 1977, the United States Supreme Court decided *Abood v. Detroit Board of Education*, 431 U.S. 209 (1977). *Abood* determined that teachers who were not union members may nonetheless be required to pay the union, as a condition of

employment, an agency fee proportionate to the percentage of union dues connected to activities "germane to [the union's] duties as collective-bargaining representative" without running afoul of the First Amendment. *Id.* at 211–12, 235–36. Nonmembers, however, could not be compelled to fund the union's political or ideological activities. *Id.* at 235–36; *see id.* at 225–226. *Abood* was the law for 41 years.

On June 27, 2018, the Supreme Court overruled *Abood* in *Janus v. American Federation of State, County, & Municipal Employees, Council 31*, 138 S. Ct. 2448, 2460 (2018). In *Janus*, the Court held that mandatory agency fees "violates the free speech rights of nonmembers by compelling them to subsidize private speech on matters of substantial public concern." *Id.*; *see id.* at 2478. This shift in precedent is at the heart of Grossman's claims.

### B.  Factual Background

#### 1.  Grossman's Union Membership

As demonstrated by the parties' joint stipulation of undisputed facts, Dkt. No. 57, the material facts are largely uncontested. Grossman is an employee of the public University. *Id.* at ¶ 5. Like many other States, Hawaii has granted public employees the right to unionize for the purpose of collective bargaining. Haw. Rev. Stat §§ 89-1(b)(1), 89-3. Employees in a bargaining unit vote for the union that will represent them, and the union that receives a majority of the votes is certified by the Hawaii

Labor Relations Board as "the exclusive representative of all employees in the unit." *See* Haw. Rev. Stat. §§ 89-7, 89-8(a). In this case, Defendant HGEA is the certified collective bargaining representative for Unit 8, covering the administrative, professional, and technical employees of the University. Dkt. No. 57, ¶ 4.

Before June 27, 2018 (when *Janus* was decided), employees in Unit 8 had two choices: (1) become an HGEA member by signing a membership card that authorizes the deduction of union dues from their pay; or (2) remain a nonmember and pay agency fees (or "fair-share fees"), which were approximately 75% of full-member dues. *See* Dkt. No. 57, ¶¶ 7–8, 13; Haw. Rev. Stat. §§ 89-3, 89-4(a)–(b).[1] In other words, employees in Unit 8 were "not required to become members of HGEA" as a condition of employment. Dkt. No. 57, ¶ 8. While HGEA members paid more out-of-pocket than nonmembers, HGEA members have the right to run for union office, vote in union officer elections, and participate in HGEA's internal affairs. Nonmembers do not have these same rights. *Id.* at ¶ 10.

In 1995, Grossman elected to become a member by signing the HGEA membership application card. Dkt. No. 57, ¶ 11; Dkt. No. 57-1. Grossman's membership application states, "membership will continue . . . until [the employee] submit[s] written resignation of membership." Dkt. No. 57-1 at 1. Unit 8 employees

---

[1] Either way, HGEA is required to represent the interests of all employees in Unit 8. Haw. Rev. Stat. § 89-8(a).

are paid through the State of Hawaii Department of Accounting and General Services (DAGS). Dkt. No. 57, ¶ 6. After Grossman became an HGEA member, DAGS deducted union dues from Grossman's pay and remitted those dues to HGEA. *Id.* at ¶ 12; *see also* Haw. Rev. Stat. § 89-4(b).

When the Supreme Court decided *Janus* on June 27, 2018, "DAGS immediately stopped deducting and HGEA stopped receiving fair-share fees from nonmembers." Dkt. No. 57, ¶ 13. The University communicated this information to its employees via email on July 6, 2018, and advised employees to direct any questions they may have to their respective union representative. Dkt. No.57-2 at 3; *cf.* Dkt. No. 57, ¶ 14. On July 7, 2018, Grossman sent an email to HGEA, Hawaii Island Division, "to verify that I am a non-member of HGEA UH Unit 8." Dkt. No. 57-2 at 8. On July 9, 2018, a representative for HGEA responded to Grossman: "Our records show that you have been an HGEA member since 1995." *Id.* at 7.

Grossman also exchanged emails with HGEA's Hawaii Island Division Chief, Lorena Kauhi. *See* Dkt. No. 64-2, ¶ 1. In an email to Kauhi, dated July 9, 2018, Grossman asked, "What determines 'membership' in HGEA Union 8? . . . The 5 July 2015 pay stub shows a deduction for [statutory deductions] . . . please explain[.]" *See id.* at 2. In a separate email sent on July 10, 2018, on which Kauhi was copied, Grossman asserted, "my status is non-member," and requested that

HGEA "confirm my status" and "have it reported to DAGS within the next ten business days[.]" *Id.* at 5–6.

HGEA Division Chief Kauhi replied by email to Grossman on July 10, 2018. In relevant part, Kauhi explained:

> [A]lthough DAGS sent the notice . . . in response to the Janus ruling, recent legislation (HB 1725) was passed this last session and enacted into law (Act 007) designating a "window" where active members can elect to discontinue dues deductions. **Since your records show that you did activate your membership in 1995, you'd [*sic*] be subject to this window.** If, after our discussion, you'd still like to move forward with suspending your dues, **your "window" for discontinuing dues would fall next year between 5/23/19–6/23/19 (appears you signed up around 5/23/95).**

Dkt. No. 57-2 at 6 (emphasis added); *see* H.B. 1725, 29th Leg., Reg. Sess. (Hi. 2018), 2018 Hi. Act. 7 (codified at Haw. Rev. Stat. § 89-4) [hereinafter "Act 7"]. Act 7 amended Section 89-4(c) by limiting when union members may resign their membership and end dues deductions. Under the current version of Section 89-4(c),[2] union members may do so only within an annual 30-day window prior to the anniversary date of the employee's union membership.

---

[2]Haw. Rev. Stat. Section 89-4(c) in full states:

> (c) The employer shall continue all payroll assignments authorized by an employee prior to July 1, 1970, and all assignments authorized under subsection (b) until the employee provides written notification within thirty days before the anniversary date of the employee's execution of the written authorization under subsection (b), to the employee's exclusive representative to discontinue the employee's assignments. The employee's exclusive representative shall provide a copy of the employee's written notification to the employer within ten business days of receipt from the employee

## 2. Grossman Resigns Her Union Membership

In July 2018, Grossman wrote to HGEA's Hawaii Island Division office and the University to advise that, "effective immediately[,]" she was resigning her HGEA membership and revoking her consent to withdraw dues from her paycheck. Dkt. No. 57-3 at 2; Dkt. No. 57, ¶ 15. That July 13, 2018 letter was received by HGEA's Hawaii Island Division office on July 14, 2018. Dkt. No. 57, ¶ 15. When DAGS nonetheless continued to deduct dues from Grossman's paycheck, Grossman brought this lawsuit on December 20, 2018 under 42 U.S.C. Section 1983 against HGEA; David Lassner, in his official capacity as the President of the University; and Clare E. Connors, in her official capacity as Attorney General of Hawaii. *See* Dkt. No. 1, ¶ 30.[3] On January 9, 2019—nearly six months after HGEA's Hawaii Island Division office received Grossman's letter—HGEA notified DAGS of Grossman's request to stop dues deductions, and dues deductions from Grossman's pay ended. Dkt. No. 57, ¶ 16.

The parties dispute why Grossman's dues deductions did not cease upon HGEA's receipt of Grossman's July 2018 letter. *See, e.g.*, Dkt. No. 79 at 3–6. According to HGEA, its policy has consistently been that when one of HGEA's

---

[3] When Grossman initially filed suit, she named Russell A. Suzuki, in his official capacity as the then-Attorney General of Hawaii. Clare E. Connors was substituted on May 21, 2019 after she succeeded Suzuki. *See* Dkt. No. 46.

island division offices receives a written request from a member to resign or end dues, the island office forwards that request to the Fiscal Office on Oahu for processing, the office purportedly responsible for processing all member requests to resign union membership and end dues deductions. Dkt. No. 64, ¶¶ 25–26. When HGEA's Hawaii Island Division received Grossman's resignation letter on July 14, 2018, the office allegedly attempted to follow HGEA policy. *Id.* at ¶ 27.

HGEA claims, however, that its Fiscal Office on Oahu did not receive Grossman's letter because of "an inadvertent administrative error or mail lost in transit." *Id.* at ¶ 28. Division Chief Kauhi recalls placing Grossman's resignation letter in "a pre-addressed envelope used for inter-office mail to HGEA's Fiscal Office" and then depositing the envelope in the usual location for pick-up at the HGEA Hawaii Island Division Office. Dkt. No. 64-2, ¶ 4. But HGEA's Fiscal Office allegedly did not receive Grossman's forwarded letter. Dkt. No. 64-1, ¶ 4; Dkt. No. 64-2, ¶ 6. HGEA's Fiscal Office asserts that it did not learn of Grossman's letter until January 2019, after Grossman had filed this lawsuit. Dkt. No. 64, ¶ 29.

The parties also contest whether HGEA applied Act 7 to Grossman. *See, e.g.*, Dkt. No. 79 at 6. HGEA asserts that it "never applied . . . Act 7 to Grossman," Dkt. No. 64, ¶ 35, a fact Grossman "vigorously disputes" in light of HGEA Division Chief Kauhi's July 10, 2018 email to Grossman, advising that, pursuant to Act 7, Grossman could not resign her membership until May 23, 2019. Dkt. No. 79 at 6;

*cf.* Dkt. No. 57-2 at 6.  Indeed, HGEA admits that "[w]hen Act 7 was enacted on April 24, 2018, HGEA assumed it applied to all HGEA members."  Dkt. No. 64, ¶ 31; Dkt. No. 64-1, ¶ 6 ("HGEA leadership interpreted [Act 7] to apply to all current HGEA members.").

Maureen Wakuzawa (the Financial Officer responsible for operation and management at HGEA's Fiscal Office) claims that later, "in August 2018, HGEA leadership reevaluated the union's interpretation of Act 7, and HGEA now understands Act 7 not to apply to any union member who signed a membership agreement and dues authorization agreement *before* Act 7 was enacted."  Dkt. No. 64-1, ¶ 8.  On August 15, 2018, after HGEA "reevaluated" its interpretation of Act 7, HGEA's Fiscal Office instructed DAGS "to stop dues deductions for a list of 55 former HGEA members," all of whom became HGEA members before Act 7 was enacted but had requested, sometime after Act 7 was enacted, that dues deductions end.  *Id.* at ¶ 9.  Wakuzawa also asserted that HGEA sent checks to each of these individuals, refunding the dues that had been deducted after they had asked that deductions end.  *Id.*  Grossman was not included in the list of 55 employees because, according to Wakuzawa, "the Fiscal Office was not aware that [Grossman] had requested to resign and end her deductions."  *Id.* at ¶ 10.

### 3.    HGEA Refunds Grossman's Dues

Between July 10, 2018 and January 9, 2019 (when dues were no longer

deducted from Grossman's pay), a total of $402.60 in dues was deducted from Grossman's pay. Dkt. No. 57, ¶¶ 16–17. On January 10, 2019, counsel for HGEA sent Grossman's counsel a letter, Dkt. No. 57-4, and a check issued to Grossman in the amount of $402.60, reimbursing these HGEA dues. Dkt. No. 57, ¶ 17.[4] On January 23, 2019, Grossman's counsel responded to HGEA counsel in a letter, stating that Grossman was treating the check "as an admission from [HGEA] that taking union dues from her after she requested to withdraw from the union was unlawful. If this is an incorrect conclusion to draw, please let us know immediately, and Mrs. Grossman will promptly return the check to you." Dkt. No. 57-5 at 1; Dkt. No. 57-5, ¶ 19.[5]

On June 21, 2019, after this action had been pending for six months, Grossman's counsel informed HGEA counsel that Grossman had still not cashed the January 10, 2019 check. Dkt. No. 57, ¶ 21. On June 28, 2019, HGEA counsel responded by sending Grossman's counsel a letter and a reissued check in the

---

[4]Deductions of $33.55 were made on approximately the 5th and 20th of each month beginning July 20, 2018 and ending January 4, 2019. The deductions on the 5th of the month covered dues for the latter half of the previous month; dues for the first half of that month were deducted on the 20th of the month. Dkt. No. 57, ¶ 17.

[5]On January 28, 2019, HGEA counsel sent a follow-up letter, explaining that the delay was due to "an administrative error." Dkt. No. 57-6; Dkt. No. 57, ¶ 20.

amount of $442.86. Dkt. No. 57, ¶ 22.[6] In the letter, HGEA counsel stated the following:

> On June 21, 2019, you informed us that Patricia Grossman never deposited the check that HGEA provided to her (through counsel) on January 10, 2019 to refund dues deducted from her pay for the period July 1, 2018 forward. You said Ms. Grossman is willing to void the original check and deposit a reissued check. Based on that representation, HGEA has cancelled the January 10, 2019 check and reissued the attached check to Ms. Grossman.

Dkt. No 57-7 at 1.

## C. Procedural History

On May 21, 2019, the Court dismissed Count II of Grossman's two-count Complaint for failure to state a claim. Dkt. No. 46. Grossman now moves for summary judgment on Count I, Dkt. No. 60, seeking declaratory, injunctive, and compensatory relief. *Id.* at 2–3. First, Grossman requests a damages award against HGEA "for all union dues collected from [her]." Dkt. No. 60, ¶ (f); *see also* Dkt. No. 1 at 16, ¶¶ (g)–(h). To that end, Grossman asks this Court to declare that she was presented with an "unconstitutional choice" when she signed her HGEA membership, and thus, she "did not provide affirmative consent" for dues to be deducted from her pay beginning in 1995. Dkt. No. 60, ¶¶ (b)–(c). Second,

---

[6]Twelve (12) payments of $33.55 (deducted on approximately the 5th and 20th of each month, beginning July 20, 2018, and ending January 4, 2019) equals $402.60. Dk. No. 57, ¶ 17. That amount, plus ten percent, yields $442.86. Thus, as HGEA notes, the reissued check to Grossman includes an additional ten percent to cover any interest. *See* Dkt. No. 63 at 18.

Grossman seeks a declaration that Haw. Rev. Stat. § 89-4(c) is unconstitutional, *see id.* at ¶¶ (a), (g), and asks this Court to enjoin the Hawaii Attorney General from enforcing the statute and enjoin Lassner and HGEA from "collecting union dues from public employees like Grossman who request to end their dues deduction prior to [the] opt-out period." *Id.* at ¶¶ (d)–(e), (g). In response, HGEA, Lassner, and the Attorney General each filed a separate cross-motion for summary judgment. Dkt. Nos. 63, 66, 68.

## STANDARD OF REVIEW

Summary judgment under Rule 56 is appropriate only when the Court, viewing the record as a whole and in the light most favorable to the nonmoving party, determines that there exists no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *See* Fed.R.Civ.P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–24 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–50 (1986). A *genuine* issue of *material* fact exists when, "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson*, 477 U.S. at 249; *see Scott v. Harris*, 550 U.S. 372, 380 (2007). This requires "more than simply show[ing] that there is some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986), and "a scintilla of evidence in support of the plaintiff's position will be insufficient," *Anderson*, 477 U.S. at 252. "[A]

complete failure of proof concerning an essential element" of a claim "necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 323.

The summary judgment standard does not change simply because the parties presented cross-motions. The court simply "evaluate[s] 'each motion separately, giving the nonmoving party in each instance the benefit of all reasonable inferences.'" *See Zabriskie v. Fannie Mae*, 912 F.3d 1192, 1196 (9th Cir. 2019) (quoting *ACLU of Nev. v. City of Las Vegas*, 466 F.3d 784, 790–91 (9th Cir. 2006)).

## DISCUSSION

**I.      The Good Faith Defense Bars Grossman's Monetary Claim for Pre-*Janus* Dues.**

The first issue is whether Grossman can recover the HGEA member dues collected from her *before Janus* was decided on June 27, 2018. Grossman claims that HGEA is liable under Section 1983 for dues collected before *Janus*, "limited only, if at all," by the applicable statute of limitations. Dkt. No. 60-1 at 8; *see id.* at 14 ("Grossman's claim is for all dues deducted since she became a union member more than 20 years ago"). Although Grossman acknowledges that "the Supreme Court had not yet issued its decision in *Janus*" when Grossman signed her HGEA membership application in 1995, Grossman's theory is that she did not voluntarily consent to pay HGEA member dues because she was not informed that public-sector employees have a First Amendment right to refuse payment of union dues for any

purpose.  Dkt. No. 60-1 at 7, 11; Dkt. No. 79 at 18.  But Grossman's theory runs headlong into the "good faith" defense.  *See* Dkt. No. 63 at 15–16; Dkt. No. 85 at 8.

"[P]rivate parties may invoke an affirmative defense of good faith to retrospective monetary liability under 42 U.S.C. § 1983." *Danielson v. Inslee*, 945 F.3d 1096, 1097 (9th Cir. 2019); *Clement v. City of Glendale*, 518 F.3d 1090, 1096–97 (9th Cir. 2008) (citing *Richardson v. McKnight*, 521 U.S. 399, 413–14 (1992)).  "[T]he purpose underlying the good faith defense" is "that private parties should be entitled to rely on binding judicial pronouncements and state law without concern that they will be held retroactively liable for changing precedents." *Danielson*, 945 F.3d at 1100; *Janus v. Am. Fed'n of State, Cty. & Mun. Emps., Council 31*, 942 F.3d 352 (7th Cir. 2019) ("*Janus II*") ("The Rule of Law requires that parties abide by, and be able to rely on, what the law is, rather than what the readers of tea-leaves predict that it might be in the future.").

In *Danielson*, a group of employees who were not union members brought suit under Section 1983, seeking to recover "all agency fees that were unlawfully collected" pre-*Janus*.  945 F.3d at 1098.  The Ninth Circuit "assumed that the right delineated in *Janus* applies retroactively," but explained that "retroactivity of a right does not guarantee a retroactive remedy." *Id.* at 1099 (citing *Davis v. United States*, 564 U.S. 229, 243 (2011)).  In the end, the court joined "a growing consensus of courts across the nation" and held that "as a matter of law" the good faith defense

shielded the union defendant from the retrospective monetary relief sought by the plaintiffs. *Id.* at 1104 & n.7 (collecting cases). Other courts have gone further, holding that a union's good faith defense bars claims brought by former *union members*, like Grossman.[7]

The good faith defense applies to the facts of this case. Under *Abood*, a union could collect "agency" or "fair-share" fees from public-sector employees who were not union members, without their consent, and these employees had no right to object under the First Amendment. *See* 431 U.S. at 225–32. *Abood* was not overruled until decades later, on June 27, 2018, when the Supreme Court decided *Janus*, holding that "States and public-sector unions may no longer extract agency fees from nonconsenting employees . . . [u]nless employees clearly and affirmatively consent before any money is taken from them[.]" *Janus*, 138 S. Ct. at 2486. Although the rule in *Janus* applies retroactively, as Grossman contends, Dkt. No. 60-1 at 8; *cf. Danielson*, 945 F.3d at 1099, when Grossman signed her HGEA membership application in 1995, HGEA was entitled to, and did, rely on *Abood* as then-binding Supreme Court precedent. Nothing in *Abood* required HGEA (or her employer) to inform Grossman that she could elect to not pay any money to HGEA.

---

[7] *See, e.g.*, *Crockett v. NEA-Alaska*, 367 F. Supp. 3d 996, 1007–08 (D. Alaska 2019); *Hernandez v. AFSCME California*, 386 F. Supp. 3d 1300, 1304–05 (E.D. Cal. 2019); *Oliver v. Serv. Employees Int'l Union Local 668*, No. 19-891, 2019 WL 5964778, at *1, *7 (E.D. Pa. Nov. 12, 2019).

Indeed, Grossman does not contend that HGEA violated any legal principle announced in *Abood* or its progeny.[8]  Because a private party is not expected to anticipate changes in constitutional law, the good faith defense shields HGEA, as a matter of law, from pre-*Janus* monetary liability.[9]

Accordingly, with respect to Grossman's claim for reimbursement of pre-*Janus* membership dues, HGEA is entitled to summary judgment.

## II.    Grossman's Remaining Claims Are Moot

That leaves Grossman's damages claim for the union dues collected after *Janus* was decided, *see* Dkt. No. 1 at 16, ¶ (h), and Grossman's request that the Court strike down Haw. Rev. Stat. Section 89-4(a) and (c) (Act 7) as unconstitutional and

---

[8]It is disingenuous for Grossman to argue that HGEA violated principles purportedly announced in *Janus*, Dkt. No. 60-1 at 6–7, and simultaneously contend that her membership agreement with HGEA is voidable because it was based on a "mutual mistake" of law; namely, that in 1995 when Grossman and HGEA executed the contract, they both mistakenly believed that a "union was permitted to take money from [Grossman] whether she signed or not." Dkt. No. 60-1 at 17–18; *see also* Dkt. No 79 at 20–21.  Under *Abood*, that was the law in 1995 and nothing suggests either party harbored a contrary understanding.  The doctrine of "mutual mistake" only applies when both parties are mistaken as to the facts or "the law in existence at the time of the making of the contract." *AIG Hawai'i Ins. Co. v. Bateman*, 923 P.2d 395, 399–400 (Haw. 1996) (quoting RESTATEMENT (SECOND) OF CONTRACTS § 151 cmt. b & § 152 (1981)).  The fact that "neither party was aware, at the time the parties entered into the [membership agreement]," that *Abood* "would be reversed" in 2018, *does not mean* that "the parties were mistaken as to their legal responsibilities regarding the [membership agreement]." *Id.* at 399.

[9]*Janus* concerned compulsory fees extracted from nonmembers; it did not uproot the bedrock principle that "the First Amendment does not confer . . . a constitutional right to disregard promises that would otherwise be enforced under state [contract] law." *Cohen v. Cowles Media Co.*, 501 U.S. 663, 671–72 (1991); *Janus*, 138 S. Ct. at 2485 ("States can keep their labor-relations systems exactly as they are—only they cannot force **nonmembers** to subsidize public-sector unions." (emphasis added); *Fisk v. Inslee*, 759 F. App'x 632, 633–34 (9th Cir. 2019); *Hernandez*, 2019 WL 7038389, at *7.  *Janus*, in other words, did nothing to nullify Grossman's HGEA membership agreement.

enjoin Defendants Lassner and the Attorney General from enforcing these provisions because, *inter alia*, the statute permits employees to withdraw their union membership only within an arbitrary 30-day window, Dkt. No. 1, ¶¶ 51–52; *id.* at 16–17, ¶¶ (i)–(j); *see* Dkt. No. 60 at ¶¶ (a), (d)–(e), (g); Dkt. No. 60-1 at 9, 11. Defendants contend these claims should be dismissed on several grounds, one of which is that Grossman's claims are moot. *See* Dkt. No. 63 at 7, 18–19; Dkt. No. 66-1 at 11–14; Dkt. No. 68-3 at 11–12. The Court agrees.[10]

---

[10]The Court notes that the "under color of law" or "state action" requirement of 42 U.S.C. Section 1983 is far more expansive than HGEA would have it. Dkt. No. 63 at 16–18, 19–20. "[C]onduct satisfying the state-action requirement of the Fourteenth Amendment satisfies the statutory requirement of action under color of state law" for purposes of Section 1983. *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 935 n.18 (1982). "Misuse of power, possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law, is action taken 'under color of' state law." *Monroe v. Pape*, 365 U.S. 167, 184 (1961) (citation omitted). Contrary to Defendants' rationale, it is irrelevant that the conduct in question was not commanded or authorized by state law, as is any notion that state action is absent simply because the conduct was contrary to state law. *See id.* at 184, 187 (discussing *Screws v. United States*, 325 U.S. 91 (1945)). Further, "[Section] 1983 . . . contains no state-of-mind requirement independent of that necessary to state a violation of the underlying constitutional right." *Daniels v. Williams*, 474 U.S. 327, 329–30 (1986); *see also Maddox v. City of Los Angeles*, 792 F.2d 1408, 1413–14 (9th Cir. 1986). "[A] private entity can qualify as a state actor in a few limited circumstances—including . . . when the government acts jointly with the private entity." *Manhattan Cmty. Access Corp. v. Halleck*, 139 S. Ct. 1921, 1928 (2019). A "procedural scheme created by . . . statute obviously is the product of state action" and "properly may be addressed in a [S]ection 1983 action." *Lugar*, 457 U.S. at 941. "[W]hen private parties make use of state procedures with the overt, significant assistance of state officials, state action may be found." *Tulsa Prof'l Collection Servs., Inc. v. Pope*, 485 U.S. 478, 486 (1988). Here, DAGS deducted fair-share fees from Grossman's paychecks and transferred that money to HGEA pursuant to Hawaii statute and a collective bargaining agreement. While Grossman initially had voluntarily agreed to pay these dues prior to *Janus*, the dues deducted after she sent her membership resignation letter were no longer voluntary or made pursuant to a "private" agreement. Dkt. No. 85 at 8. As such, *Janus II* is not inapposite merely because the case involved claims by nonmembers. 942 F.3d at 361. The dispositive fact is HGEA obtained Grossman's post-resignation dues (after she was effectively a nonmember), and that was made possible only because of HGEA's joint action with the State and its statutory regime. Therefore, HGEA is a proper defendant under Section 1983.

## A.     Legal Framework

"Article III of the Constitution grants the [federal courts] authority to adjudicate 'Cases' and 'Controversies.'" *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 90 (2013).  To satisfy this requirement and "invoke the jurisdiction of a federal court," a litigant must demonstrate standing, *i.e.*, they must "have suffered, or be threatened with, an actual injury traceable to the defendant and likely to be redressed by a favorable judicial decision." *Lewis v. Continental Bank Corp.*, 494 U.S. 472, 477 (1990); *Already, LLC*, 568 U.S. at 90.  Put simply, a plaintiff "must demonstrate that [they] possesses a legally cognizable interest, or 'personal stake,' in the outcome of the action." *Genesis HealthCare Corp. v. Symczyk*, 569 U.S. 66, 71 (2013) (citation omitted) (quoting *Camreta v. Greene*, 563 U.S. 692, 701 (2011)).  The plaintiff, moreover, "must continue to have a 'personal stake in the outcome' of the lawsuit," *Lewis*, 494 U.S. at 478, "not merely at the time the complaint is filed." *Alvarez v. Smith*, 558 U.S. 87, 92 (2009) (internal quotation marks omitted).  "This requirement ensures that the Federal Judiciary confines itself to its constitutionally limited role of adjudicating actual and concrete disputes, the resolutions of which have *direct consequences on the parties involved*." *Genesis HealthCare*, 569 U.S. at 71 (emphasis added).

"A case becomes moot—and therefore no longer a 'Case' or 'Controversy' for purposes of Article III—'when the issues presented are no longer 'live' or the

parties lack a legally cognizable interest in the outcome.'" *Already, LLC*, 568 U.S.

at 91 (quoting *Murphy v. Hunt*, 455 U.S. 478, 481 (1982) (*per curiam*)). Thus, "[i]f

an intervening circumstance deprives the plaintiff of a 'personal stake in the outcome

of the lawsuit,' at any point during litigation, the action can no longer proceed and

must be dismissed as moot." *Genesis HealthCare*, 569 U.S. at 72 (citation omitted).

The plaintiff lacks a "personal stake" in the litigation—and thus the case is moot—

"only when it is impossible for a court to grant any effectual relief whatever to the

prevailing party." *Knox v. SEIU, Local 1000*, 567 U.S. 298, 307 (2012) (citations

and internal quotation marks omitted). To that end, a federal court must evaluate

Article III jurisdiction as to "each claim [a plaintiff] seeks to press and for each form

of relief that is sought." *See Town of Chester v. Laroe Estates, Inc.*, 137 S. Ct. 1645,

1650 (2017) (quoting *Davis v. Federal Election Comm'n*, 554 U.S. 724, 734 (2008)).

### B.      Grossman's Claim for Post-*Janus* Damages

Grossman's claim for post-*Janus* damages is moot. It is undisputed that on

January 9, 2019, dues deductions from Grossman's pay ceased, and the total amount

that was deducted between July 10, 2018 and when the dues ceased is $402.60. Dkt.

No. 57, ¶¶ 16–17. Through counsel, HGEA sent Grossman a check for $402.60,

Dkt. No. 57-4; Dkt. No. 57, ¶18, but on June 21, 2019, Grossman's counsel informed

HGEA counsel that Grossman had not cashed the check for $402.60. Dkt. No. 57,

¶¶ 21. HGEA counsel later responded by sending Grossman's counsel a letter and

a reissued check in the amount of $442.86, reflecting a ten percent increase to cover interest. Dkt. No. 57, ¶ 22.[11] The letter—which is attached to the parties' stipulated facts—recounts that Grossman's counsel had informed HGEA counsel that "Grossman is willing to void the original check and deposit a reissued check," and accordingly, that HGEA acted on that representation by issuing Grossman a check for $442.86. Dkt. No 57-7 at 1. "Where an offer invites an offeree to accept by rendering a performance, no notification is necessary to make such an acceptance effective unless the offer requests such a notification."[12] *See Hew v. Aruda*, 462 P.2d 476, 481 (Haw. 1969) ("[S]ilence in the light of previous dealings between parties may operate as assent."). As such, HGEA accepted Grossman's offer when it tendered the check for $442.86, and as a result, Grossman's claim for post-*Janus* damages became moot.

To be sure, unlike with the first check for $402.60, nothing in the record suggests that Grossman rejected the reissued check. The fact that HGEA *actually issued and provided* the check to Grossman without any strings attached makes this case distinctly different from *Knox v. SEIU, Local 1000*, 567 U.S. 289 (2012), where the union's refund notice to class members did not moot the case because it included "a host of conditions, caveats, and confusions" and essentially sought to

---

[11]*See supra* note 6.
[12]RESTATEMENT (SECOND) OF CONTRACTS § 54(1) (1981).

"unilaterally" dictate "the manner in which [the union] advertise[d] the availability of the refund" to class members. *Id.* at 308. Yet Grossman makes a last-ditch effort to keep her damages claim alive by asserting for the first time in her reply brief that she "treated these checks as an incomplete offer of settlement and rejected them." Dkt. No. 79 at 24 (citing Dkt. No. 57, ¶ 21). But Grossman's citation to the parties' stipulated facts does not support her proposition. An opposing party cannot avoid summary judgment by supporting its factual contentions with bald assertions in its legal memoranda; rather, a litigant "must support [their] assertion[s] by citing to particular parts of materials in the record." *See, e.g.*, Fed.R.Civ.P. 56(c)(1)(a); *Anderson*, 477 U.S. at 256–57; *Teamsters Local Union No. 117 v. Wash. Dep't of Corr.*, 789 F.3d 979, 994 (9th Cir. 2015).[13]

In sum, Grossman sought "damages against HGEA for all union dues collected from [Grossman] since the *Janus* decision on June 27, 2018." Dkt. No. 1 at 16, ¶(h). Because the undisputed evidence in the record indicates Grossman has received just that from HGEA, plus ten percent interest, Grossman's claim for post-*Janus* damages is moot.

---

[13]*See also Californians for Renewable Energy v. Cal. PUC*, 922 F.3d 929, 936 (9th Cir. 2019) ("[I]t is not [the court's] task . . . to scour the record in search of a genuine issue of triable fact." (citations and internal quotation marks omitted)); *Carmen v. S.F. Unified Sch. Dist.*, 237 F.3d 1026, 1031 (9th Cir. 2001) (supporting evidence must be "set forth in the opposing papers with adequate references so that it could conveniently be found."); *S. Cal. Gas Co. v. City of Santa Ana*, 336 F.3d 885, 889 (9th Cir. 2003) ("General references without page or line numbers are not sufficiently specific.").

## C.    Prospective Injunctive and Declaratory Relief Regarding Act 7

Grossman has no "personal stake" in challenging the constitutionality of Act 7 or enjoining the enforcement of the statute's opt-out window, and thus, both forms of relief sought by Grossman are moot.  Grossman concludes otherwise and argues that two exceptions to the mootness doctrine save her remaining claims: (1) voluntary cessation; and (2) wrongs capable of repetition, yet evading review.  *See* Dkt. No. 60-1 at 12–16; Dkt. No. 79 at 13–17; *cf. EEOC v. Fed. Express Corp.*, 558 F.3d 842, 847 (9th Cir. 2009) (listing four major exceptions to the mootness doctrine).  Both theories are unavailing.

### 1.    Voluntary Cessation

The voluntary cessation doctrine does not save Grossman's equitable claims. Unless the party asserting mootness can satisfy the "heavy burden" of proving that it is "absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur," *Parents Involved in Cmty. Schs. v. Seattle Sch. Dist. No. 1*, 551 U.S. 701, 719 (2007) (quoting *Friends of Earth, Inc. v. Laidlaw Environmental Services (TOC), Inc.*, 528 U.S. 167, 189 (2000)), its "voluntary cessation of challenged conduct does not . . . render a case moot." *Knox*, 567 U.S. at 307.  The focus of the inquiry is whether the challenged conduct cannot "reasonably be expected to recur" with respect to the complaining party.  *See, e.g.*, *Logan v. U.S. Bank N.A.*, 722 F.3d 1163, 1166 (9th Cir. 2013) (defendant bank "offered no

evidence or reassurance that it either could not or would not reinitiate the unlawful detainer action against [the plaintiff] at another time"); *McCormack v. Herzog*, 788 F.3d 1017, 1025 (9th Cir. 2015) (prosecutor's offer of transactional immunity "does not by itself make it 'absolutely clear' that the prosecution of [the plaintiff] would never recur.").

Defendants have satisfied this burden. Although the evidence—when viewed in the light most favorable to Grossman—suggests that Grossman was initially subjected to Act 7's opt-out window, Dkt. No 57-2 at 5; Dkt. No. 79 at 4–6, 12–13, rather than some "inadvertent administrative error" on HGEA's part, the interim events of HGEA processing Grossman's membership resignation and refunding her dues for the relevant period, *see supra* Section I, "have completely and irrevocably eradicated the effects of the alleged violation," *Buono v. Norton*, 371 F.3d 543, 545–46 (9th Cir. 2004). As a result, Grossman no longer has a "personal" stake in challenging Act 7 simply because she was subjected to its terms in the past.

Nor does Grossman have a "personal stake" in this lawsuit that is grounded in some threatened interest. That is, it is absolutely clear that Grossman "could not reasonably be" again subjected to the opt-out window in Act 7 because that window applies only to *members* and Grossman, by her own 2018 choice, is no longer a member. The fact that HGEA may have changed its conduct "only after being sued," Dkt. No. 60-1 at 12, is not enough to keep this controversy alive. Unlike a woman

faced with the ongoing risk that a prosecutor will re-file charges under a state statute for the termination of her past pregnancy and the stark probability that she also may became pregnant and seek another abortion, *see McCormack*, 788 F.3d at 1025–27, or an individual who continued to remain in possession of a piece of real estate where she might again be subjected to an unlawful detainer action, *Logan*, 722 F.3d at 1165–66, here, in light of Grossman's status as a nonmember and the mechanics of Act 7, Grossman is no longer in a position where it is reasonable to expect that she will again fall within the purview of Act 7 and be subjected to its opt-out window.

For Grossman to come under the scrutiny of Act 7 in the future, she would first need to become a member and then wish to withdraw her membership before the opt-out window. But even then, Act 7 would not present the same issue for Grossman that it does here because she will have voluntarily become a member knowing in advance that she is locked in for 11 months. Thus, any threat Act 7 poses to Grossman is "two steps removed from reality." *See Super Tire Eng'g Co. v. McCorkle*, 416 U.S. 115, 123 (1974) (discussing *Oil Workers Unions v. Missouri*, 361 U.S. 363 (1960) and in *Harris v. Battle*, 348 U.S. 803 (1954)).

Grossman's reliance on *Knox v. SEIU, Local 1000*, 567 U.S. 298, 307 (2012), is misplaced. Dkt. No. 60-1 at 14; Dkt. No. 79 at 15. In *Knox*, the circumstances of the constitutional challenge concerned dues extracted from *nonmembers* without their consent. There, it was thus reasonable to find that the union would not

"necessarily refrain from collecting similar fees in the future" from *nonmembers* who were still covered by a collective bargaining agreement. *Knox*, 567 U.S. at 302, 307. By contrast, Act 7 only impacts union members, which Grossman is not. Because the wrongful behavior in this case could not reasonably be expected to recur, HGEA's voluntary cessation of the challenged conduct alone does not warrant this Court continuing to hear the case.

### 2.    Capable of Repetition, Yet Evading Review

The capable-of-repetition-yet-evading-review exception to the mootness doctrine does not apply. "That exception applies 'only in exceptional situations,' where (1) 'the challenged action [is] in its duration too short to be fully litigated prior to cessation or expiration,' and (2) 'there [is] a reasonable expectation that **the same complaining party [will] be subject to the same action again**.'" *Kingdomware Techs., Inc. v. United States*, 136 S. Ct. 1969, 1976 (2016) (brackets in original; emphasis added) (quoting *Spencer v. Kemna*, 523 U. S. 1, 17 (1998)). Grossman's challenge to the annual opt-out window in Act 7 satisfies the first requirement. *Johnson v. Rancho Santiago Cmty. Coll. Dist.*, 623 F.3d 1011, 1019 (9th Cir. 2010) (observing that "three years is too short" for full judicial review). But Grossman cannot satisfy the "capable of repetition" requirement.

As with Grossman's voluntary cessation theory, the fatal defect here is the fact that there is no "reasonable expectation that [Grossman] [will] be subject to [the

terms of Act 7] again." *Kingdomware Techs.*, 136 S. Ct. at 1976. Of course, Grossman continues to dispute the lawfulness of Act 7. But the problem is that Grossman's "dispute is no longer embedded in any actual controversy about [Grossman's] particular legal rights." *Alvarez v. Smith*, 558 U.S. 87, 93 (2009). Instead, "it is an abstract dispute about the law, unlikely to affect [Grossman] any more than it affects other [Hawaii] citizens. And a dispute solely about the meaning of a law, abstracted from any concrete actual or threatened harm, falls outside the scope of the constitutional words 'Cases' and 'Controversies.'" *Id.*; *see Already, LLC*, 568 U.S. at 91.

*Super Tire Eng'g Co. v. McCorckle*, 416 U.S. 115, 122–26 (1974), on which Grossman relies, is not to the contrary. There, a group of employers sought to enjoin the two State welfare programs that made benefits available to striking workers. *Id.* at 117–119. Although the strike ended before an injunction could be issued, the Court concluded that the case was not moot because the employers' subsequent relations with the union would be affected by the ongoing state policy to provide welfare to employees when they chose to go on strike. *Id.* at 123–24. That "personal stake" was "not contingent, ha[d] not evaporated or disappeared, and by its continuing and brooding presence, cast[ed] . . . a substantial adverse effect ***on the interests of the petitioning parties***." *Id.* at 122, 125 (emphasis added). By contrast, Grossman does not have a similar interest in Act 7. That is, it cannot be said that

Act 7 "has adversely affected *and continues to affect a present interest*" for Grossman, as a nonmember, any more than Act 7 impacts members of the general public. *Super Tire Eng'g Co.*, 416 U.S. at 126 (emphasis added). Therefore, this case does not fall within the capable-of-repetition-yet-evading-review exception to the mootness doctrine.

Lastly, Grossman turns to a separate line of cases for support. She cites *Fisk v. Inslee*, 759 F. App'x 632 (9th Cir. 2019), and argues that a challenge to Hawaii's annual period for revoking union membership is the type of transitory claim for which judicial review remains available after a plaintiff is no longer subject to the challenged conditions. Dkt. No. 79 at 14–16. *Fisk* is similar to this case in that it involved a challenge by former union members to an opt-out window restriction. *Id.* at 633. But *Fisk*, unlike this case, was brought as a class action. Complaint at 8–10, 13, *Fisk v. Inslee*, No. 3:16-cv-5889 (W.D. Wash. Oct. 20, 2016), ECF No. 1. In *Fisk*, the Ninth Circuit acknowledged that "no class ha[d] been certified and [the union] and the State ha[d] stopped deducting dues," but nonetheless, the court concluded that plaintiffs' non-damages claims were not moot. 759 F. App'x at 633. Citing *Gerstein v. Pugh*, 420 U.S. 103, 111 n.11 (1975), the court reasoned that plaintiffs' "non-damages claims are the sort of inherently transitory claims for which continued litigation is permissible." *Fisk*, 759 F. App'x at 633.

The fact that Grossman did not bring this case as a class action is significant. In *United States v. Sanchez-Gomez*, 138 S. Ct. 1532, 1540 (2018), the Supreme Court recently reversed the Ninth Circuit and explicitly "reject[ed] the notion that *Gerstein* supports a freestanding exception to mootness outside the class action context." *Id.* at 1538. The Court explained that *Gerstein* was brought as a class action by detainees raising claims concerning their pretrial detention, and although the case was certified as a class action under Fed.R.Civ.P. 23, it was discovered that the named representatives' claims had become moot before the class was certified. *Id.* at 1537–38. Due to the "inherently temporary" and "uncertain length" of pretrial custody, *id.* at 1538, it was unlikely "that any given individual, named as plaintiff, would be in pretrial custody long enough for a district judge to certify the class." *Id.* (quoting *Gerstein,* 420 U.S. at 110–11, n.11). But "it was certain that there would always be some group of detainees subject to the challenged practice[,]" and, therefore, the Court held in *Gerstein* that the class action could proceed. *Id.*

The Court went on to underscore that "*Gerstein* . . . provides a limited exception to [the] requirement that a named plaintiff with a live claim exist at the time of class certification," and the exception applies only when "the pace of litigation and the inherently transitory nature of the claims at issue conspire to make that requirement difficult to fulfill." *Id.* at 1539 (citation omitted). As such, the Court emphasized that *Gerstein*'s rule is "tied . . . to the class action setting from

which it emerged." *Id.* at 1539 (collecting cases); *see also Genesis HealthCare Corp. v. Symczyk*, 569 U.S. 66, 76 (2013) (explaining that the "doctrine may apply in Rule 23 cases where it is 'certain that other persons similarly situated' will continue to be subject to the challenged conduct and the claims raised are 'so inherently transitory that the trial court will not have even enough time to rule on a motion of class certification before the proposed representative's individual interest expires.'" (quoting *Cty. of Riverside v. McLaughlin*, 500 U.S. 44, 52 (1991)).

Here, *Gerstein*'s exception does not apply, and thus *Fisk* is inapposite. *Fisk* fit within *Gerstein*'s exception because although "no class ha[d] been certified," 759 F. App'x at 633, the case was brought as a class action. Complaint at 8–10, 13, *Fisk v. Inslee*, No. 3:16-cv-5889 (W.D. Wash. Oct. 20, 2016), ECF No. 1. This case differs because Grossman did not file her complaint as a class action, and she never sought to certify this case as a class action at any point in this litigation. The "'mere presence of . . . allegations' that might, if resolved in [Grossman's] favor, benefit other similarly situated individuals cannot 'save [Grossman's] suit from mootness once [her] individual claim[s]' have dissipated." *Sanchez-Gomez*, 138 S. Ct. at 1540 (quoting *Genesis HealthCare*, 569 U.S. at 73). Indeed, "[n]o matter how vehemently the parties continue to dispute the lawfulness of the conduct that precipitated the lawsuit," *Already, LLC*, 568 U.S. at 91, "Article III denies federal courts the power to decide questions that cannot affect *the rights of litigants in the case before them*,"

*Lewis*, 494 U.S. at 477 (emphasis added; citations and internal quotation marks omitted). Accordingly, this Court joins the other courts that have addressed claims by former union member's challenging opt-out provisions[14] in concluding that Grossman's claims for equitable prospective relief are moot.

Because intervening circumstances during this litigation have deprived Grossman of any "personal stake in the outcome of the lawsuit" that would save her claims from mootness, *Genesis HealthCare*, 569 U.S. at 72, such that it is now "impossible" for this Court "to grant any effectual relief whatever" to Grossman, *Knox*, 567 U.S. at 307, this action "can no longer proceed" and is "dismissed as moot." *Genesis HealthCare*, 569 U.S. at 72.

## CONCLUSION

For the foregoing reasons, Defendants are entitled to summary judgment on Count I. Plaintiff's motion for partial summary judgment, (Dkt. No. 60), is therefore DENIED, and Defendants' cross-motions for summary judgment, (Dkt. Nos. 63, 66, 68), are GRANTED to the extent set forth herein.

---

[14] *Oliver*, 2019 WL 5964778, at *7 (finding moot a former union member's claims for declaratory and injunctive relief regarding state statutes that restricted window of time in which union members could withdraw their membership); *Hendrickson v. AFSCME Council 18*, No. 18-1119 RB/LF, 2020 WL 365041, at *4–5 (D.N.M. Jan. 22, 2020).

The Clerk of Court is instructed to enter Judgment, pursuant to this Order, and the Order entered on May 21, 2019, (Dkt. No. 46). The Clerk is then DIRECTED to close this case.

IT IS SO ORDERED.

DATED: January 31, 2020 at Honolulu, Hawaiʻi.

_____
Derrick K. Watson
United States District Judge

---

*Patricia Grossman vs. Hawaii Government Employees Association/AFSCME Local 152, et al.*, Civil No. 18-00493 DKW-RT; **ORDER (1) DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT; (2) GRANTING DEFENDANTS' CROSS-MOTIONS FOR SUMMARY JUDGMENT; AND (3) DISMISSING THIS ACTION**